# SMITH, SPECIAL ADMINISTRATOR, *v.*
# SPERLING ET AL.

No. 316.   Argued March 27–28, 1957.—Decided June 10, 1957.

*Herman H. Levy* argued the cause for petitioner. With him on the brief was *Morris J. Pollack.*

*Eugene D. Williams* and *Oliver B. Schwab* argued the cause for respondents. On the briefs were *Mr. Williams* and *Ralph E. Lewis* for Warner Bros. Pictures, Inc., et al., and *Mr. Schwab, Marvin Sears* and *Norman Altman* for United States Pictures, Inc., et al., respondents.

Mʀ. Justice Douglas delivered the opinion of the Court.

This suit was filed in a Federal District Court in California by reason of diversity of citizenship. It is a stockholder's derivative suit. The first cause of action, the only one involved here, is based on alleged fraudulent wastage of assets of Warner Bros. Pictures, Inc. (which we will call Warner Bros.) for the benefit of one Sperling, a son-in-law of a director of Warner Bros., and United States Pictures, Inc. (which we will call United), the son-in-law's corporation. Extended allegations are made concerning various agreements between Warner Bros. and United which, it is charged, are unfair to Warner Bros. Demand on the directors of Warner Bros. to institute this action was not made because, it is averred, such a demand would be futile since, *inter alia,* all or a majority of the

board of directors approved the contracts. The plaintiff is a citizen of New York; [1] the defendant directors are citizens of California; and Warner Bros. and United are Delaware corporations.

The complaint joined Warner Bros. as a defendant. It was urged before the District Court, and it is claimed here, that since the cause of action sought to be enforced is one that belongs to the corporation and since the corporation is not "antagonistic" to the stockholder within the meaning of that term as used in *Doctor* v. *Harrington*, 196 U. S. 579, 588, Warner Bros. should be realigned as plaintiff. In that event there would be no diversity of citizenship since Delaware corporations would be on both sides of the lawsuit. *Strawbridge* v. *Curtiss*, 3 Cranch 267.

The District Court held a hearing on the issue—a hearing that lasted 15 days. It found:

(1) that the contracts in controversy were made in good faith and without fraud; that they were considered by the

---

[1] While the action was pending plaintiff died and for him a special administrator has been substituted. The latter is a citizen of California.

Had the suit been originally commenced by the decedent's representative, it would have been the citizenship of the representative which would have been determinative of jurisdiction in this diversity case. See *Chappedelaine* v. *Dechenaux*, 4 Cranch 306; *Childress* v. *Emory*, 8 Wheat. 642, 669; *Mexican Central R. Co.* v. *Eckman*, 187 U. S. 429, 434; *Mecom* v. *Fitzsimmons Drilling Co.*, 284 U. S. 183, 186. But jurisdiction, once attached, is not impaired by a party's later change of domicile. *Mollan* v. *Torrance*, 9 Wheat. 537. As Chief Justice Marshall said in that case: "It is quite clear, that the jurisdiction of the Court depends upon the state of things at the time of the action brought, and that after vesting, it cannot be ousted by subsequent events." *Id.*, p. 539. The rationale, that jurisdiction is tested by the facts as they existed when the action is brought, is applied to a situation where a party dies and a non-diverse representative is substituted. *Dunn* v. *Clarke*, 8 Pet. 1 (1834).

directors to be in the best interests of Warner Bros. and that, in approving them, they exercised their best business judgment;

(2) that Warner Bros. was not under the domination or control of the Warners on the board; and that the stockholders, officers, or directors were not "antagonistic to the financial interests" of Warner Bros.;

(3) that neither all nor a majority nor any of the directors and officers of Warner Bros. "wrongfully participated" in the acts complained of; that the board was not dominated or controlled by the Warners and Sperling or by any one or more of them;

(4) that if demand had been made on Warner Bros. to institute suit, the management would not have been disqualified "from faithfully doing their duty" as officers and directors but that "such a demand would have been futile." [2]

For these reasons the District Court realigned Warner Bros. as a party plaintiff and dismissed the bill. 117 F. Supp. 781. The Court of Appeals affirmed. 237 F. 2d 317. The case is here on a writ of certiorari. 352 U. S. 865.

This is a corporate cause of action brought by a stockholder. Whether it is a proper case for assertion by a stockholder of that cause of action is not the question here. Such was the problem involved in *Hawes* v. *Oakland*, 104 U. S. 450, upon which so much reliance is placed in supporting the court below. Here we assume that this corporate cause of action may be enforced by the stock-

---

[2] The bill therefore meets the requirements of Rule 23 (b) of the Rules of Civil Procedure that the stockholder show with particularity what efforts he made to get those who control the corporation to take action, "and the reasons for his failure to obtain such action or the reasons for not making such effort." And see *Hawes* v. *Oakland*, 104 U. S. 450; *Delaware & Hudson Co.* v. *Albany & S. R. Co.*, 213 U. S. 435.

holder. We are concerned only with a question of federal diversity jurisdiction.

The gist of the findings of the District Court is that since there was no fraud on the part of the directors in making the contracts but only an exercise of independent business judgment, the management was not antagonistic to the financial interests of the corporation. That is an issue that goes to the merits, not to the question of jurisdiction. There will, of course, be antagonism between the stockholder and the management where the dominant officers and directors are guilty of fraud or misdeeds. But wrongdoing in that sense is not the sole measure of antagonism. There is antagonism whenever the management is aligned against the stockholder and defends a course of conduct which he attacks. The charge normally is cast in terms of fraud, breach of trust, or illegality. See *Doctor* v. *Harrington, supra; Venner* v. *Great Northern R. Co.*, 209 U. S. 24; *Koster* v. *(American) Lumbermens Mutual Casualty Co.*, 330 U. S. 518, 522, 523. The answer, of course, always denies the charge of wrongdoing. To stop and try the charge of wrongdoing is to delve into the merits. That does not seem to us to be the proper course. It is a time-consuming, wasteful exertion of energy on a preliminary issue in the case. The instant case is a good illustration, for it has been over eight years in the courts on this question of jurisdiction.

Since our decision in *Erie R. Co.* v. *Tompkins*, 304 U. S. 64, the law which governs the merits in these derivative actions is local law. *Cohen* v. *Beneficial Loan Corp.*, 337 U. S. 541, 555–556. The result, then, of the approach followed by the court below is to have more than a preliminary trial on matters going to the merits of the controversy. Obviously federal law would govern the preliminary trial on the issues of wrongdoing, for that matter goes to the question of federal jurisdiction. Yet should the District Court decide those issues in favor of

the stockholder, a second trial on the merits will require that the same issues be tried out according to the set of rules supplied by local law.

It seems to us that the proper course is not to try out the issues presented by the charges of wrongdoing but to determine the issue of antagonism on the face of the pleadings and by the nature of the controversy. The bill and answer normally determine whether the management is antagonistic to the stockholder, as *Central R. Co.* v. *Mills,* 113 U. S. 249, and *Doctor* v. *Harrington, supra,* indicate.[3] The management may refuse or fail to act for any number of reasons. Fraud may be one; the reluctance to take action against a close business associate may be another; honest belief in the wisdom of the course of action which the management has approved may be still another; and so on. As the Court said in *Delaware & Hudson Co.* v. *Albany & S. R. Co.,* 213 U. S. 435, 451,

---

[3] The Court in *Doctor* v. *Harrington, supra,* at p. 587, said, "The ultimate interest of the corporation made defendant may be the same as that of the stockholder made plaintiff, but the corporation may be under a control antagonistic to him, and made to act in a way detrimental to his rights. In other words, his interests, and the interests of the corporation, may be made subservient to some illegal purpose. If a controversy hence arise, and the other conditions of jurisdiction exist, it can be litigated in a Federal court."

The complaint in that case charged fraud by a dominant director and stockholder to his advantage and to the detriment of the minority stockholders. The answer denied the fraud. The Court did not stop, as the District Court did in the instant case, to inquire if transactions complained of were colorable or were sustained by sound business judgment. After reviewing the earlier decisions, the Court concluded, "The case at bar is brought within the doctrine of those cases by the allegations of the bill." *Id.,* p. 588. The leading case cited by the Court was *Hawes* v. *Oakland,* 104 U. S. 450, where in determining whether a proper case for a derivative action had been made out, the Court looked *only to the nature of the charges contained in the bill. Id.,* pp. 461–462.

where the management was deemed to be antagonistic to the stockholder, "The attitude of the directors need not be sinister. It may be sincere." Whenever the management refuses to take action to undo a business transaction or whenever, as in this case, it so solidly approves it that any demand to rescind would be futile, antagonism is evident. The cause of action, to be sure, is that of the corporation. But the corporation has become through its managers hostile and antagonistic to the enforcement of the claim.

Collusion to satisfy the jurisdictional requirements of the District Courts may, of course, always be shown; [4] and it will always defeat jurisdiction. Absent collusion, there is diversity jurisdiction when the real collision of issues, *Indianapolis* v. *Chase National Bank,* 314 U. S. 63, 69, or as stated in *Helm* v. *Zarecor,* 222 U. S. 32, 36, "the actual controversy," is between citizens of different States. This is a practical not a mechanical determination and is resolved by the pleadings and the nature of the dispute.

Here it is plain that the stockholder and those who manage the corporation are completely and irrevocably opposed on a matter of corporate practice and policy. A trial may demonstrate that the stockholder is wrong and the management right. It may show a dispute that lies in the penumbra of business judgment, unaffected by fraud. But that issue goes to the merits, not to jurisdiction. There is jurisdiction if there is real collision be-

[4] 28 U. S. C. § 1359 provides:

"A district court shall not have ·jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

Collusion is shown, for example, where the neglect or refusal of the directors to take the desired action on the part of the corporation is simulated so that it may be made to appear that the diversity of citizenship necessary for federal jurisdiction exists. *Detroit* v. *Dean,* 106 U. S. 537; *Quincy* v. *Steel,* 120 U. S. 241.

tween the stockholder and his corporation. That there is such a collision is evident here.

The judgment must therefore be reversed and the case remanded to the District Court.

*Reversed.*

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE BURTON, MR. JUSTICE HARLAN, and MR. JUSTICE WHITTAKER join, dissenting.†

The Court holds that, collusion aside, whenever a corporation refuses to bring a suit and a derivative suit is brought by a stockholder on its behalf, the corporation is always to be aligned as a defendant for purposes of determining diversity jurisdiction. The Court thus makes the exception the rule, and by confounding the requirements for establishing a substantive cause of action with the requirements of diversity jurisdiction, it overturns a half-century's precedents in this Court. The scope and significance of this undoing cannot be appreciated without a brief review of the history of the jurisdictional adjudications—which control the present cases—and of the wholly different precedents establishing the substantive rules that govern stockholders' suits when there is unquestionable jurisdiction in the constitutional sense. It will also be necessary to set forth generous portions of the opinions of the Court in prior cases to demonstrate that not only do they not support the Court's view but that they are being overturned by it.

The present cases involve the jurisdiction of the federal courts, and that question alone. No aspect of the substantive cause of action is before us. At the outset, two guiding principles governing this litigation must be kept clearly in mind: (1) These are constitutional cases, involving the "judicial power" of the United States over

---

† [This opinion applies also to No. 149, *Swanson* v. *Traer*, *post*, p. 114.]

controversies "between citizens of different States."
(2) These are stockholders' suits; the stockholder sues
not in his own right but in the right and on behalf of the
corporation.

The contrasting difference between a stockholder's suit
for his corporation and a suit by him against it, is crucial.
In the former, he has no claim of his own; he merely has
a personal controversy with his corporation regarding the
business wisdom or legal basis for the latter's assertion of
a claim against third parties. Whatever money or prop-
erty is to be recovered would go to the corporation, not a
fraction of it to the stockholder. When such a suit is
entertained, the stockholder is in effect allowed to con-
script the corporation as a complainant on a claim that
the corporation, in the exercise of what it asserts to be
its uncoerced discretion, is unwilling to initiate. This is
a wholly different situation from that which arises when
the corporation is charged with invasion of the stock-
holder's independent right. Thus, for instance, if a cor-
poration rearranges the relationship of different classes
of security holders to the detriment of one class, a stock-
holder in the disadvantaged class may proceed against
the corporation as a defendant to protect his own legal
interest.

The basic principles of diversity jurisdiction, often
stated, obviously bear repeating:

> "To sustain diversity jurisdiction there must exist
> an 'actual,' *Helm* v. *Zarecor,* 222 U. S. 32, 36, 'sub-
> stantial,' *Niles-Bement-Pond Co.* v. *Iron Moulders
> Union,* 254 U. S. 77, 81, controversy between citizens
> of different states, all of whom on one side of the
> controversy are citizens of different states from all
> parties on the other side. *Strawbridge* v. *Curtiss,* 3
> Cranch 267. Diversity jurisdiction cannot be con-
> ferred upon the federal courts by the parties' own

determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to 'look beyond the pleadings and arrange the parties according to their sides in the dispute.' *Dawson* v. *Columbia Trust Co.*, 197 U. S. 178, 180." *Indianapolis* v. *Chase National Bank*, 314 U. S. 63, 69.

The initial and leading case dealing with the alignment of parties for jurisdictional purposes in a stockholder's suit is *Doctor* v. *Harrington*, 196 U. S. 579. That was a suit by stockholders against two individuals alleged to control the company in question and a third-party corporation. Realigning the corporation as a plaintiff, the Circuit Court held that there was no diversity, and it dismissed the bill for lack of jurisdiction. This Court reversed. After stating that Equity Rule 94 (now Rule 23 (b) of the Federal Rules of Civil Procedure) contemplated suits "brought by a stockholder in a corporation founded on rights which may properly be asserted by the corporation," the Court went on to indicate what must have been the basis for aligning the corporation in that case as a defendant:

> "And the decisions of this court establish that such a suit, when between citizens of different States, involves a controversy cognizable in a Circuit Court of the United States. The ultimate interest of the corporation made defendant may be the same as that of the stockholder made plaintiff, but the corporation may be under a control antagonistic to him, and made to act in a way detrimental to his rights. In other words, his interests, and the interests of the corporation, may be made subservient to some illegal purpose. If a controversy hence arise, and the other conditions of jurisdiction exist, it can be litigated in a Federal court." 196 U. S., at 587.

The Court then went on to discuss these other "conditions of jurisdiction," *i. e.*, the complainants' compliance with the substantive and procedural requirements of Equity Rule 94. In refusing to realign, the Court did not state that mere refusal to sue on the part of the corporation was a sufficient reason to align the corporation as a defendant. The Court referred to "antagonistic" control and the stockholder's "interests, and the interests of the corporation" being made "subservient to some illegal purpose."

This question of what constitutes "antagonistic" control is the crux of the present cases. The District Court in No. 316, in the course of its thorough opinion, stated:

> "For a corporation to be 'in antagonistic hands,' . . . or to have a 'hostile attitude,' . . . such as would permit alignment on the side against its presumptive· financial interests, surely requires more than a mere argument or difference of opinion between the corporation and the suing stockholder as to the desirability of bringing the suit. Patently, if difference of opinion were all the 'controversy' required to be shown between the stockholder and his corporation in order to preclude alignment of the latter with the plaintiff-stockholder, then there can be no occasion for all the pages of discussion of corporate domination or control, since every stockholder's derivative suit is by definition predicated upon the assumption that the corporation has refused to sue." 117 F. Supp. 781, 802.

This has been the view that this Court has consistently taken since *Doctor* v. *Harrington*. Three years later, *Doctor* v. *Harrington* was reaffirmed and its basis made clear in *Venner* v. *Great Northern R. Co.*, 209 U. S. 24. That was a stockholder's suit brought in a state court

against the Great Northern Railroad and its President, James J. Hill, with an allegation that the "railroad and its board of directors were under his absolute control." *Id.*, at 29. Both defendants were citizens of the same State. They removed the case into the federal court and the plaintiff, claiming that the corporation should be realigned, sought remand to the state court on the ground that the federal court lacked jurisdiction. The Court, if such was its thought, obviously would have said *simpliciter* that since the corporation refused to sue, the corporation must be aligned as a defendant. It did not do so. The whole thought of Mr. Justice Moody's opinion is completely contrary.

> "Let it be assumed for the purposes of this decision that the court may disregard the arrangement of parties made by the pleader, and align them upon the side where their interest in and attitude to the controversy really places them, and then may determine the jurisdictional question in view of this alignment. [Citing the *Removal Cases,* 100 U. S. 457, and other cases.] If this rule should be applied it would leave the parties here where the pleader has arranged them. It would doubtless be for the financial interests of the defendant railroad that the plaintiff should prevail. But that is not enough. Both defendants unite, as sufficiently appears by the petition and other proceedings, in resisting the plaintiff's claim of illegality and fraud. They are alleged to have engaged in the same illegal and fraudulent conduct, and the injury is alleged to have been accomplished by their joint action. The plaintiff's controversy is with both, and both are rightfully and necessarily made defendants, and neither can, for jurisdictional purposes, be regarded otherwise than as a defendant. . . ." *Id.*, at 31–32.

To make explicit the case's relation to the prior case of *Doctor* v. *Harrington,* the Court continued:

"The case of *Doctor* v. *Harrington* is precisely in point on this branch of the case, and is conclusive. In that case the plaintiffs, stockholders in a corporation, brought an action in the Circuit Court against the corporation and Harrington, another stockholder, 'who directed the management of the affairs of the corporation, dictated its policy, and selected its directors.' It was alleged that Harrington fraudulently caused the corporation to make its promissory note without consideration, obtained a judgment on the note, and sold, on execution, for much less than their real value, the assets of the corporation to persons acting for his benefit. On the face of the pleadings there was the necessary diversity of citizenship, but it was insisted that the corporation, because its interest was the same as that of the plaintiff, should be regarded as a plaintiff. The court below so aligned the corporation defendant, and, as that destroyed the diversity of citizenship, dismissed the suit for want of jurisdiction. This court reversed the decree, saying [the quotation is of the part of the Court's opinion in *Doctor,* quoted *supra,* p. 100]. There was therefore in the case at bar the diversity of citizenship which confers jurisdiction." *Id.,* at 32–33.

The jurisdictional doctrine of *Doctor* v. *Harrington,* as reaffirmed and elaborated in *Venner* v. *Great Northern R. Co.,* was accepted without question only ten years ago in *Koster* v. *Lumbermens Mutual Co.,* 330 U. S. 518. The Court in that case summarized the jurisdictional doctrine of alignment of parties in stockholders' suits:

"The cause of action which such a plaintiff brings before the court is not his own but the corporation's.

> It is the real party in interest and he is allowed to act in protection of its interest somewhat as a 'next friend' might do for an individual, because it is disabled from protecting itself. If, however, such a case as this were treated as other actions, the federal court would realign the parties for jurisdictional purposes according to their real interests. In this case, which is typical of many, this would put [the corporation] on the plaintiff's side. . . . and jurisdiction would be ousted. *Indianapolis* v. *Chase National Bank*, 314 U. S. 63. But jurisdiction is saved in this class of cases by a special dispensation because the corporation is in antagonistic hands. *Doctor* v. *Harrington*, 196 U. S. 579." *Id.*, at 522–523.

Mr. Justice Jackson's opinion for the Court throws further light on what is meant by "antagonistic hands" by characterizing "the real party in interest," the corporation, as "disabled from protecting itself." That cannot mean anything else except what the *Venner* case, quoting from *Doctor* v. *Harrington,* set forth as the reason for disablement, *viz.,* that the very individuals who have a stranglehold over the corporation are the people against whom suit is sought to be brought and, therefore, in any sense that has any meaning, they are the defendants for that reason. And it is not merely that the obvious sense of the foregoing paragraph quoted from *Koster* gives the significance to *Doctor* v. *Harrington* that *Venner* gave it. That meaning is reinforced by the Court's succeeding reference to a stockholder's interest in "bringing faithless managers to book." *Id.*, at 524.

In the District Court in No. 316, *Smith* v. *Sperling,* Judge Mathes made an exhaustive survey of all the precedents relating to the jurisdictional test to be applied in stockholders' suits, 117 F. Supp. 781, aff'd, 237 F. 2d

317, and stated the jurisdictional test to be derived from the cases as follows:

> "If the corporation has suffered actionable wrong and is 'in antagonistic hands'—*i. e.* so dominated that it is incapacitated to act in keeping with its own financial interests—then a federal court should not, because of such disability, align the corporation with the plaintiff-stockholder in determining whether diversity jurisdiction exists." 117 F. Supp., at 801.

The Court of Appeals for the Seventh Circuit took the same view in No. 149, *Swanson* v. *Traer,* 230 F. 2d 228, 237.

The jurisdictional rules that the Court has laid down for over half a century—emerging from all the cases and not merely from *Doctor* v. *Harrington* standing by itself—do not represent a capricious or formalistic determination as to when there is or is not diversity jurisdiction. On the contrary, they represent a true appreciation of the nature of the stockholder's suit and a faithful application of well-settled principles of diversity jurisdiction: when a suit is brought that is in fact and in law the corporation's, the corporation from the nature of the cause of action is a plaintiff and must appear among the plaintiffs, except when the corporation is in fact the tool of the very people against whom a judgment is sought. In the latter circumstances the corporation is merely a compendious name for the controlling defendants who are hiding behind it.

The Court, purporting to interpret this half-century of precedents, sweeps them away. In so doing, it greatly expands the diversity jurisdiction. "Antagonism" is a difficult standard to meet and is a more unusual situation. Refusal to sue provides automatic entry. Moreover, whenever the corporation and the real defendants are of the same citizenship, there would be no diversity juris-

diction unless antagonism could be shown. No similar restriction on jurisdiction is made because of possible non-diverseness of the stockholder and the corporation defendant because it is generally not too difficult to find a non-diverse stockholder to institute suit.

The Court professes to do no more than to apply well-settled precedents. But the well-settled precedents that are applied have absolutely "nothing to do with the case." The Court has found support in the line of cases that deal solely with substantive requirements or with the procedural rules for establishing compliance with those requirements. These have nothing to do with the constitutional jurisdiction of the federal courts in diversity suits.

Prior to the Judiciary Act of 1875, 18 Stat. 470, there was only very limited federal question jurisdiction in the District Courts. See Hart and Wechsler, The Federal Courts and the Federal System, 727–730. Moreover, diversity jurisdiction was established on the basis of the alignment set forth in the pleadings. *Removal Cases,* 100 U. S. 457, 469. If a corporation desiring to bring suit could not come within the requirements of diversity jurisdiction, the only way its suit could be tried in the federal courts, prior to the vast enlargement of their jurisdiction by the Act of 1875, was by virtue of a suit brought on its behalf by a stockholder of the requisite citizenship. This was the procedure followed in the important case of *Dodge* v. *Woolsey,* the Court noting that any suspected issue of contrivance should have been alleged and proved by the defendant. 18 How. 331, 346.

The result of this practice was described by Mr. Justice Miller for the Court in the leading case of *Hawes* v. *Oakland,* 104 U. S. 450, 452.

> "Since the decision of this court in *Dodge* v. *Woolsey* . . . the frequency with which the most ordi-

nary and usual chancery remedies are sought in the Federal courts by a single stockholder of a corporation who possesses the requisite citizenship, in cases where the corporation whose rights are to be enforced cannot sue in those courts, seems to justify a consideration of the grounds on which that case was decided, and of the just limitations of the exercise of those principles.

"This practice has grown until the corporations created by the laws of the States bring a large part of their controversies with their neighbors and fellow-citizens into the courts of the United States for adjudication, instead of resorting to the State courts, which are their natural, their lawful, and their appropriate forum. . . . A corporation having such a controversy, which it is foreseen must end in litigation, and preferring for any reason whatever that this litigation shall take place in a Federal court, in which it can neither sue its real antagonist nor be sued by it, has recourse to a holder of one of its shares, who is a citizen of another State. This stockholder is called into consultation, and is told that his corporation has rights which the directors refuse to enforce or to protect. He instantly demands of them to do their duty in this regard, which of course they fail or refuse to do, and thereupon he discovers that he has two causes of action entitling him to equitable relief in a court of chancery; namely, one against his own company . . . for refusing to do what he has requested them to do; and the other against the party which contests the matter in controversy with that corporation. These two causes of action he combines in an equity suit in the Circuit Court of the United States, because he is a citizen of a different State, though the real parties to the contro-

versy could have no standing in that court. . . . the whole case is prepared for hearing on the merits, the right of the stockholder to a standing in equity receives but little attention, and the overburdened courts of the United States have this additional important litigation imposed upon them by a simulated and conventional arrangement, unauthorized by the facts of the case or by the sound principles of equity jurisdiction." *Id.*, at 452–453.

The Court in *Hawes* v. *Oakland* was not concerned at all with control of the corporation by allegedly wrongdoing directors for purposes of aligning the parties. The Court was concerned with imposition on the jurisdiction of the federal judiciary in the general run of stockholders' actions, and more particularly, in the usual situation where the defendants would not be directors at all but third parties having nothing to do with the management of the corporation.

The Court in *Hawes*, therefore, announced restrictions . upon a stockholder attempting to bring "a suit founded on a right of action existing in the corporation itself, and in which the corporation itself is the appropriate plaintiff." *Id.*, at 460. Not only must a complainant show some *ultra vires* or fraudulent action by the directors but he must also demonstrate that he was a shareholder at the time of the transaction complained of (or acquired shares thereafter by operation of law), that he has made efforts to induce the desired action by the directors and, if necessary, by the stockholders, and that "the suit is not a collusive one to confer on a court of the United States jurisdiction in a case of which it could otherwise have no cognizance . . . ." *Id.*, at 461. These rules were codified that Term in Equity Rule 94, see 104 U. S. ix, now Rule 23 (b) of the Federal Rules of Civil Procedure. Their history and purpose indicate the character of the

requirements laid down by the Court. They do not define the constitutional jurisdiction of the Court; they are the allegations in any event requisite to the Court's proceeding to consider the case. In *Hawes* itself, the Court, after finding that the stockholder had not complied with the requisites for suit, dismissed the action, not for want of jurisdiction, but for want of equity. The argument that compliance with the rule was a jurisdictional requirement was made and rejected in *Venner* v. *Great Northern R. Co.*, 209 U. S., at 33–34: "this argument overlooks the purpose and nature of the rule. . . . Neither the rule nor the decision from which it was derived deals with the question of the jurisdiction of the courts, but only prescribes the manner in which the jurisdiction shall be exercised."

Compliance with Rule 94 was the issue in *Delaware & Hudson Co.* v. *Albany & S. R. Co.*, 213 U. S. 435. In that case, the lower court certified to this Court questions concerning maintenance of a stockholders' suit in the face of failure to allege demand for relief upon the directors and stockholders of the corporation. The Court held that such a demand would have been futile in view of the control of the defendant corporation by the other corporate defendant. It was during the course of its discussion of the futility of making a demand in such a situation that the Court stated what is relied upon by the Court in the present case—that the "attitude of the directors need not be sinister. It may be sincere." *Id.*, at 451. Of course, the Court in that case was quite correct. But it was not concerned with, or adverting to, jurisdictional alignment, any more than it was talking about jurisdictional alignment in *Hawes,* also now relied upon by the Court. Both cases involved the preliminary requirements for stating a cause of action under the Rules. (For a similar discussion of what stockholders must allege with respect to the attitude of directors, but in a case where there was clearly

federal question jurisdiction, see *Ashwander* v. *TVA,* 297 U. S. 288, 318–323, and 341–344.)\*

Further confusion is introduced by the fact that both problems—jurisdictional alignment and compliance with Rule 94—may be present in the same case. This was true in *Doctor* v. *Harrington,* where the Court was not very careful in making explicit separation of the two issues; it was also true of *Venner* v. *Great Northern R. Co., supra,* where the Court was very careful to separate the two issues. Such separation of very different concepts is of course essential when one characterizes the attitude of the directors. It is one thing when suit is against a third party to hold that a demand on the directors need not be made if such demand would for any reason be futile, and that sincere opposition by directors would make such a demand futile. It is quite something else to state that, since sincere opposition is sufficient for that purpose, it is also sufficient to demonstrate that the corporation is "disabled from protecting itself" and should therefore be aligned as a defendant. That, as we have seen, is factually false and is contrary to what this Court for 52 years has laid down as the controlling rules governing diversity jurisdiction.

One final matter of general importance should be discussed before applying the general principles adduced to the facts of the present cases. The Court states: "[T]he proper course is not to try out the issues presented by the charges of wrongdoing but to determine the issue of antagonism on the face of the pleadings and by the nature of the controversy." Of course the charges of wrongdoing need not be determined to ascertain the jurisdiction of

---

\*The confusion between these two lines of cases—the jurisdictional alignment cases and the cases dealing with the problems with which former Equity Rule 94 was concerned—is fully treated in the opinion of District Judge Mathes in No. 316. See 117 F. Supp. 781, 792–809.

the federal courts. What must be determined when directors or other persons alleged to control the corporation are joined as defendants is the relation of these people to the corporation. And while in certain cases the issues may be determined from the face of the pleadings, the courts are not so limited. The Court speaks of making "a practical not a mechanical determination," but a more mechanical determination could hardly be imagined. If anything had been regarded as settled until today about federal jurisdiction, it was that "It is our duty, as it is that of the lower federal courts, to 'look beyond the pleadings and arrange the parties according to their sides in the dispute.' *Dawson* v. *Columbia Trust Co.,* 197 U. S. 178, 180." *Indianapolis* v. *Chase National Bank,* 314 U. S. 63, 69. Of course, this may take time and may not always be easy of determination. I had not thought up to now that such considerations should lead us to disregard our constitutional obligation, for, as the District Court in No. 316 stated, "It is more than costly error therefore—it is an unconstitutional invasion of the jurisdiction of the state courts—for a federal court to sustain federal jurisdiction of a civil action between private persons where 'the matter in controversy' exceeds the sum or value of $3,000 . . . but does not arise 'under the Constitution, laws or treaties of the United States,' . . . and diversity of citizenship as to 'the matter in controversy' does not exist. U. S. Const. Art. III; 28 U. S. C. § 1332. . . ." 117 F. Supp., at 808.

The proceedings in each of the present cases have followed different paths. In No. 316, *Smith* v. *Sperling,* the District Court held a hearing to determine the presence of the special circumstances that this Court's decisions indicated would require alignment of the corporation as a defendant. It did not find such circumstances and, aligning the corporation as a plaintiff, it dismissed the cause of action for lack of the requisite diversity. 117

F. Supp. 781. On appeal, the Court of Appeals for the Ninth Circuit affirmed this aspect of the case. 237 F. 2d 317. I find no justification for overturning the findings and conclusions of the District Court made after extended hearing and analysis and affirmed by the Court of Appeals. I would therefore affirm.

In No. 149, *Swanson* v. *Traer,* the District Court dismissed plaintiffs' complaint on the merits because it did not appear that they had "laid a foundation sufficient to support a derivative stockholders' suit." On appeal, the Court of Appeals for the Seventh Circuit affirmed, but on the ground that necessary realignment of the corporation as a plaintiff destroyed diversity and required dismissal of the suit for lack of jurisdiction. 230 F. 2d 228. Examining the pleadings, the position taken by the corporation in the litigation, especially the affidavit and statement by counsel for the corporation, the Court of Appeals concluded that "in their business judgment, both the directors and Mr. Busch [the corporation's counsel] were of the sincere opinion that the filing of such a suit would not be for the best interests of the corporation and its stockholders. The named plaintiffs disagreed. This difference of opinion is not of itself evidence of antagonism on the part of the Railway Company." *Id.,* at 237.

The court stated that the allegation of the complaint that "several members" of the corporation's board of directors at the time suit was filed had been a part of the alleged conspiracy was insufficient to allege antagonism by a majority of the board. The court was also impressed by a lengthy, detailed affidavit filed by the corporation's counsel, retained after the transactions complained of, who stated that he had reviewed the transaction pursuant to the direction of the board of directors and had advised against suit. The facts relied on by the Court of Appeals are not without weight in support of its conclusion. The plaintiffs' general allegations, how-

ever, imply hostility on the part of the whole board of directors, and, in this state of the record, plaintiffs should have been given an opportunity to substantiate their allegations at a hearing before the District Court, as was the indicated course of proceeding when the matter initially came before the District Court. For this reason, I would remand the case for such a hearing.