MASH ENTERPRISES, INC. f/k/a Human Resource Options, Inc. and Professional Leasing Concepts, Inc., Plaintiffs,

v.

PROLEASE ATLANTIC CORPORATION, et al., Defendants.

No. CIV.A. 01–2437.

United States District Court, E.D. Pennsylvania.

March 13, 2002.

---

Alex J. Murland, Daniel R. Grabianow-ski, Rick E. Eslinger, Murland, Goldstein & Nathan, Jenkintown, PA, for plaintiffs.

Stanley H. Goldschmidt, Tamir D. Da-mari, Washington, DC, James L. McKen-na, McKenna, Walker & Capriotti, Cherry Hill, NJ, James L. McKenna, McKenna, Walker & Capriotti, Norristown, PA, for defendants and counter-Claimants.

### MEMORANDUM

ROBERT F. KELLY, Senior District Judge.

Presently pending before this Court is Defendants' Motion to Dismiss Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and Plaintiffs' Response.[1] For the following reasons, Defendants' Motion will be denied.

1. Also, currently pending with this Court are several motions dealing with a default entered against the Defendants on November 28, 2001, however, the instant Opinion solely addresses the outstanding Motion to Dismiss for Lack of Subject Matter Jurisdiction.

2. Specifically, Plaintiffs' claims against the Defendants are the following: constructive

## I. *FACTUAL BACKGROUND*

This action arises out of the purchase of substantially all of the assets of Human Resource Options, Inc. ("HRO"), the predecessor in interest of Plaintiff MASH Enterprises, Inc. ("MASH"), by Defendant Prolease Atlantic Corporation ("Prolease Atlantic"), in or about May, 2000. As a result of this purchase, Plaintiffs are suing Defendants on ten separate state law counts including, but not limited to, breach of contract, fraud and civil conspiracy.[2] (Am.Compl.). The Amended Complaint alleges that the Court has subject matter jurisdiction over this action under the diversity jurisdiction statute, 28 U.S.C. § 1332(a)(1), because the amount in controversy exceeds $75,000 and the adverse parties are diverse. (*Id.*, ¶ 11). There is no other basis for federal jurisdiction. For purposes of this motion, the Court feels it unnecessary to delve into the extensive procedural history of this action, however, the Court finds it is instructive to explain the general structure and business activity of the parties.

MASH, formerly known as HRO, and Prolease Atlantic are Professional Employer Organizations ("PEO"). In general, "[a] PEO provides to its client companies a range of human resource functions including[,] but not limited to[:] payroll, payroll tax administration, 401(k) and pension administration, benefits (including[,] but not limited to[,] health, dental, life, disability, etc.), unemployment insurance administration and workers compensation insurance." (*Id.*, ¶ 14). A PEO enters into a contract

trust after an accounting (Count I); breach of contract (Count II); fraud (Count III), breach of covenant of good faith (Count IV); civil conspiracy (Count V); intentional interference with contract (Count VI); conversion (Count VII); unjust enrichment (Count VIII); breach of covenant of good faith (Count IX); and intentional interference with contract (Count X). (Am.Compl.).

with its client companies ("client contract") under which the PEO assumes substantial employer rights, responsibilities and risk and establishes and maintains a co-employer relationship with the client companies' workers ("external employees"). (*Id.,* ¶ 15). That is, external employees, who were originally the employees of the client company, contractually become "co-employees" of the PEO and the client company. (Pls.' Reply Defs.' Mot. to Dismiss, at 6). These external employees are then "leased back" to the original employer and continue to conduct the business of the client company. (*Id.*). The PEO is the "co-employer" for the sole purpose of providing its human resource services to the external employees on behalf of the client company. (*Id.*). Thus, as a result of the nature of its business, a PEO has two types of employees: (1) external employees, the co-employees of the PEO and client company and (2) internal employees, the PEO's own employees who actually conduct and operate the business of the PEO.

## II. DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(1), Defendants challenge the subject matter jurisdiction of this Court over Plaintiffs' Amended Complaint. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) may advance either a facial or factual challenge to subject matter jurisdiction. *Fin. Software Sys., Inc. v. First Nat'l Bank,* 84 F.Supp.2d 594, 596 (E.D.Pa.1999) (citing *Mortensen v. First Fed. Sav. and Loan Assoc.,* 549 F.2d 884, 891 (3d Cir.1977)). A facial challenge to subject matter jurisdiction protests the existence of jurisdiction based on the face of the complaint, whereas, a factual challenge to the existence of subject matter jurisdiction is based in fact. *Id.* Whatever type of challenge may be asserted, it is the Plaintiff who bears the burden of proving that the pertinent jurisdictional re-

quirements are satisfied. *Dev. Fin. Corp. v. Alpha Housing & Health Care, Inc.,* 54 F.3d 156, 158 (3d Cir.1995) (citation omitted). As for the determination of whether subject matter jurisdiction exists, it must be based on the facts in the record of the case. *The Mennen Co. v. Atl. Mut. Ins. Co.,* 147 F.3d 287, 294 (3d Cir.1998) (stating "subject matter jurisdiction depends upon facts of record, and when any question arises as to the existence of jurisdiction a federal court is obligated to make an independent determination of those facts.").

### A. Facial Challenge to Subject Matter Jurisdiction

In the present case, Defendants assert both a facial and factual challenge to subject matter jurisdiction. *See* Defs.' Mot. to Dismiss. First, Defendants argue that Plaintiffs' Amended Complaint is fatally flawed on its face. *Id.* at 6–11. Defendants' facial challenge centers on the contention that Plaintiffs' Amended Complaint fails to properly allege the requisite facts to confer subject matter jurisdiction. *Id.* Specifically, Defendants argue that Plaintiffs improperly plead that Defendant, Prolease Atlantic, a Delaware corporation, maintains *a* principal place of business in the State of Maryland, instead of properly pleading that Prolease Atlantic maintains *its* principal place of business in the State of Maryland. *Id.* (emphasis added). In their Reply to Defendants' Motion to Dismiss, Plaintiffs have conceded that their Amended Complaint improperly alleges the requisite facts to confer subject matter jurisdiction. (Pls.' Reply Defs.' Mot. to Dismiss, at 1–2). As a result, Plaintiffs have stated that they intend to file a Second Amended Complaint which will properly plead the factual allegations indicating the complete diversity of citizenship of the parties to the action. (*Id.* at 2). Since Defendants' facial challenge to the exis-

tence of subject matter jurisdiction has been conceded to, and will be subsequently cured, by the Plaintiffs, the Court will now exclusively deal with Defendants' factual challenge to the existence this Court's subject matter jurisdiction over this action.

## B. Factual Challenge to Subject Matter Jurisdiction

Defendants' factual challenge to the existence of subject matter jurisdiction centers on the contention that there is not complete diversity among all of the parties to the action. *See* Defs.' Mot. to Dismiss. Under 28 U.S.C. § 1332, diversity jurisdiction is properly invoked in cases where there is complete diversity of citizenship between plaintiffs and defendants and where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. In order "to satisfy the jurisdictional requirements of 28 U.S.C. § 1332(a)(1), the federal diversity statute, diversity must be complete; that is, no plaintiff can be a citizen of the same state as any of the defendants." [3] *Midlantic Nat. Bank v. Hansen*, 48 F.3d 693, 696 (3d Cir.1995) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990); *Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1142 (3d Cir.1972)); *see also Dev. Fin. Corp.*, 54 F.3d at 158 (stating "[i]t is axiomatic that the federal judiciary's diversity jurisdiction depends on complete diversity between all plaintiffs and all defendants."). Thus, "jurisdiction is lacking if any plaintiff and any defendant are citizens of the same state." *The Mennen Co.*, 147 F.3d at 290 (citation omitted). Regarding diversity jurisdiction involving parties that are corporations, as is the case here, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." [4] 28 U.S.C. § 1332(c)(1). Thus, in order to determine whether diversity exists between the parties in this case, the Court must examine the parties' respective citizenship at the time the complaint was filed.

Defendants' Motion to Dismiss focuses on the citizenship of two parties, in particular, Plaintiff MASH and Defendant Prolease Atlantic. (Defs.' Mot. to Dismiss, at 2). There is no dispute that, at the time that the complaint was filed, Plaintiff MASH was a citizen of the Commonwealth of Pennsylvania.[5] However, there is a dispute regarding Prolease Atlantic's citizenship as determined by the location of its principal place of business.[6] In their Amended Complaint, Plaintiffs allege that Prolease Atlantic's principal place of business is located at 7361 Calhoun Place,

---

3. When determining whether diversity jurisdiction exists, a court must examine the citizenship of the parties at the time the complaint was filed. *Midlantic Nat. Bank v. Hansen*, 48 F.3d 693, 696 (3d Cir.1995) (citing *Smith v. Sperling*, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957)) (stating that jurisdiction is tested by the facts as they exist when the action is brought). Since the original Complaint in this action was filed May 17, 2001, the Court must examine the citizenship of the parties as of that date.

4. With respect to the citizenship of corporations, 28 U.S.C. § 1332(c) provides:
   [f]or the purposes of this section ... a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business....
   28 U.S.C. § 1332(c)(1).

5. Plaintiffs' Amended Complaint states that Plaintiff MASH is a Pennsylvania corporation with a principal place of business located in Pennsylvania. (Am.Compl., ¶ 1).

6. Prolease Atlantic is incorporated in the State of Delaware; therefore, Defendants argument that Prolease Atlantic is a Pennsylvania citizen centers on the assertion that Pennsylvania is its principal place of business. (Defs.' Mot. to Dismiss, at 2).

Rockville, Maryland, which confers diversity jurisdiction because it imports that Prolease Atlantic is a citizen of Maryland. (Am. Compl., ¶ 3). In their Motion to Dismiss, Defendants conversely argue that Prolease Atlantic maintains its principal place of business in Pennsylvania, which destroys diversity jurisdiction because then both Plaintiff, MASH, and Defendant, Prolease Atlantic, would be citizens of Pennsylvania. (Defs.' Mot. to Dismiss). Thus, Defendants' argument regarding lack of diversity is premised upon the assertion that Prolease Atlantic is a citizen of the State of Pennsylvania based on its principal place of business being located in Pennsylvania. (*Id.*). Consequently, it follows that the determination of Prolease Atlantic's principal place of business is of pivotal significance. As a result, the issue in this case is whether Prolease Atlantic's principal place of business, at the time of the commencement of the action, was located in Maryland, which allows this Court subject matter jurisdiction based on complete diversity, or Pennsylvania, which prohibits this Court from presiding over the action because diversity would not be complete.

### 1. Determination of A Corporation's Principal Place of Business

In this Circuit, the determination of a corporation's principal place of business for purposes of 28 U.S.C. § 1332 is governed by a "center of corporate activities" test. *The Mennen Co.*, 147 F.3d at 291 (citing *Kelly v. U.S. Steel Corp.*, 284 F.2d 850, 854 (3d Cir.1960)). The "center of corporate activities" test is an operational approach which requires courts to ascertain the state where the corporation has its "headquarters of day-to-day corporate activity and management." *Id.* (citing *Kelly*,

284 F.2d at 854) (citations omitted). Thus, the "center of corporate activities" test focuses on the center of the corporation's production or service activities in order to determine a corporation's principal place of business, unlike the "nerve center" test, which focuses on the location where corporate policy decisions are made. *Id.* at 291–94. Accordingly, under the "center of corporate activities" test, a key factor in determining a corporation's principal place of business is the location of the center of corporate activity and management or day-to-day activities. *Kelly*, 284 F.2d at 854 (stating "it is the activities rather than the occasional meeting of policy-making directors which indicate the principal place of business."). Other less significant, but relevant, secondary factors to be considered include: (1) the location of the physical plants and the like; (2) the location of corporate assets; and (3) the location of employees. *Id.; Wheelabrator Frackville Energy Co., Inc. v. Morea Culm Servs., Inc.*, 741 F.Supp. 536, 539 (E.D.Pa.1990). After applying the "center of corporate activities" test to the facts of this case, the Court finds that Prolease Atlantic's principal place of business is located in Maryland.

### a. Application of the "Center of Corporate Activities" Test

### 1. Center of Corporate Activity and Management or Day–To–Day Activities

Prolease Atlantic's center of corporate activity and management is located in Maryland. The testimony of Audrey Buell, Prolease Atlantic's Operations Manager, revealed that the majority of services performed by Prolease Atlantic under its client contracts are performed in Maryland.[7] In fact, according to Ms. Buell's

---

7. On March 4, 2002, the Court held a hearing on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction. The hearing specifically addressed the issue of the location of Prolease Atlantic's principal place of business.

testimony, just about the only client service performed by Prolease Atlantic in its Pennsylvania office deals with Workers Compensation Claims. The remainder of services provided by Prolease Atlantic in conjunction with its client contracts occurs in Maryland. These client services include, but are not limited to, the following: administration of payroll and wages; processing of federal, state and local payroll tax services; non-tax salary withholdings (ie., health insurance payments, life insurance payments, 401(k) pension fund administration); administration of vacation and sick leave; compliance with immigration regulations; and COBRA functions. In addition to the aforementioned, Ms. Buell testified that Prolease Atlantic's client database is located and operated in Maryland, not Pennsylvania. Where Prolease Atlantic's client database is located and operated is significant because it is this client database that contains all of the pertinent information about a client necessary to perform PEO functions. Likewise significant is Ms. Buell's testimony that virtually all accounting handled on behalf of Prolease Atlantic is performed in Maryland, which includes Prolease Atlantic's internal employees receiving their paychecks from Maryland.

The affidavit and testimony of Mark Fried, who served as the Senior Vice President of Operations for Professional Staff Leasing Corporation ("Prolease"), further substantiates that Prolease Atlantic' principal place of business was located in Maryland at the commencement of this action.[8] Immediately after the sale of HRO to Prolease Atlantic, Mr. Fried's early employment with Prolease involved the transition of all aspects of HRO's operations from the Pennsylvania office to the Maryland office. (Pls.' Reply Defs.' Mot. to Dismiss, Ex. 2 ¶ 7). The transition of operations included, but was not limited to, the following: payroll processing, benefits management, workers compensation policy management, invoicing, accounts receivable, accounts payable, client contract management, payroll records maintenance, customer service and related functions. (Id.).

As of December 31, 2000, Mr. Fried testified that the transition of client functions formerly provided by HRO at the Pennsylvania office for clients sold to Prolease Atlantic had been moved to the Maryland office. (Id., ¶ 23). On the date of Mr. Fried's last day of employment with Prolease, he stated that the status of operations in servicing and otherwise performing the obligations required by the client contracts of Prolease Atlantic were performed in Maryland. (Id., ¶ 24). The functions and services performed solely in the Maryland office included, but were not limited to, the following: the function of processing new personnel for Prolease Atlantic clients, processing of all payroll for all Prolease Atlantic clients, processing of employee and employer federal, state and local payroll taxes and payments, all information related to the activities for the week would be filed and maintained in the Maryland office (i.e. all payroll and wage documents, new employee documents, changes to employee files, tax and benefits information), administration of vacation and sick leave, activities relating to Immigration regulations, COBRA functions, and the creation and maintenance of employee handbook. (Id.). In addition to the aforementioned, Mr. Fried also testified that a

8. Professional Staff Leasing Corporation ("Prolease") is also a Defendant in this action. (Am.Compl). Prolease is a Maryland corporation with its principal place of business in Maryland. (Id., ¶ 4). Mark Fried served as the Senior Vice President of Operations for Professional Staff Leasing Corporation from July 5, 2000 through January 25, 2001. (Pls.' Reply Defs.' Mot. to Dismiss, Ex. 2 ¶ 2).

new payroll and human resource database was created in the Maryland office to support all servicing activities for Prolease Atlantic's clients. (*Id.*, ¶ 10). During Mr. Fried's tenure with Prolease, access to all databases pertaining to Prolease Atlantic client companies and employees could only be accomplished through the Maryland office. (*Id.*, ¶ 12).

Not only did the testimony of both Audrey Buell and Mark Fried prove that Maryland is center of Prolease Atlantic's corporate activity and management, but it also revealed that Maryland is also the place where a majority of the policy decisions are made. Ms. Buell's and Mr. Fried's testimony revealed that policy decisions for Prolease Atlantic were made primarily by Balaji Ramamoorthy and others in Maryland.[9] In addition to the aforementioned testimony, the Plaintiffs also presented a letter from Mr. Ramamoorthy addressed to a Prolease Atlantic client which reveals the significant role that Maryland played in relation to Prolease Atlantic's policies. (Pls.' Reply Defs.' Mot. to Dismiss, Ex. 12). The letter states that as a result of restructuring the client service model, clients have been placed on a team and are instructed that they now have "one point of contact for [their] entire payroll, benefits and human resource needs." (*Id.*). As the letter points out, this one point of contact is with Maryland. (*Id.*). By making Maryland the one main point of contact with Prolease Atlantic clients, the letter not only reveals that Mr. Ramamoorthy had significant policy making authority, but also substantiates the contention that the state of Maryland played a major role in the day-to-day operations, services and policy decisions of Prolease Atlantic.

In addition to the aforementioned, Plaintiffs also presented the testimony of former and current clients of Prolease Atlantic, Carrie Volkman, Diane Casacio and Stanley Casacio. This testimony further substantiated the actuality that the majority of services performed by Prolease Atlantic in conjunction with their client contracts were performed in Maryland.[10] Likewise, the testimony of Diane and Stanley Casacio about their dealings with Prolease Atlantic outside of their client contracts, i.e. in the purchase of office furniture and landlord-tenant relations, revealed that the State of Maryland played an integral part in the administrative aspects of the business of Prolease Atlantic.

In this case, even though Defendants are in the best possible position to show the location of its own principal place of business, they offer virtually no evidence to refute the evidence proffered by Plaintiffs.[11] Although Defendant Prolease Atlantic is in the possession of all corporate documentation and relevant factual information pertaining to the day-to-day operations of its own business, it has come forward with practically no concrete evidence accounting for the operational aspects of Prolease Atlantic's production or service activities. The only evidence offered by Defendants in support of their argument that Prolease Atlantic's principal place of business is located in Pennsylvania is an affidavit by Michael Todd, General Counsel of Prolease. (Defs.' Mot. to Dismiss,

9. Balaji Ramamoorthy is the sole shareholder and officer of Prolease Atlantic. (Pls.' Reply Defs.' Mot. to Dismiss, Ex. 5 ¶ 3).

10. Plaintiffs also included an affidavit by Carrie Volkman which attests that her dealings with Prolease Atlantic through her employment as an office manager for MRA Interna-

tional, Inc. were primarily serviced in Maryland. (Pls.' Reply Defs.' Mot. to Dismiss, Ex. 4).

11. At the hearing, Defendants failed to present any testimony regarding Prolease Atlantic's principal place of business.

Ex. 1). Without explaining why an affidavit by Prolease's general counsel is relevant to the issue of Prolease Atlantic's principal place of business, Defendants rely on Mr. Todd's statement that "management of Prolease's Atlantic's day-to-day operations is undertaken by Audrey Buell ... who works at Prolease Atlantic's [Pennsylvania] office and is responsible for all aspects of servicing Prolease Atlantic's clientele." (*Id.*, ¶ 10). This statement holds no weight since it was directly contradicted by the testimony of Audrey Buell and other evidence adduced at the hearing. Mr. Todd's only other assertions that have relevance to this Court's determination of Prolease Atlantic's principal place of business do not deal with Prolease Atlantic's production or service activities, but address the secondary issues of consideration such as the location of Prolease Atlantic's office and personnel.

### 2. Consideration of Secondary Factors

As mentioned earlier, when applying the "center of corporate activities" test, in addition to the operations and services provided by a corporation, a Court may also consider such other relevant factors as: (1) the location of the physical plants and the like; (2) the location of corporate assets; and (3) the location of employees. *Kelly*, 284 F.2d at 854. It is primarily these factors upon which Defendants rely to argue that Prolease Atlantic's principal place of business is located in Pennsylvania. In regards to these factors, Mr. Todd's affidavit states the following: (1) "Prolease Atlantic does not maintain any offices apart from its office in ... Pennsylvania"; (2) "[a]ll of Prolease Atlantic's tangible assets (including, but not limited to, Prolease Atlantic's furniture, office equipment, computers, etc.) are located in its ... Pennsylvania office"; and (3) "[a]ll of Prolease Atlantic's internal administrative employees are employed within the Common-wealth of Pennsylvania." (Defs.' Mot. to Dismiss, Ex. 1 ¶¶ 6–8). Just as Mr. Todd's assertion that the management of Prolease's Atlantic's day-to-day operations occurs within Pennsylvania has been directly contradicted, these statements are also directly contradicted by the evidence adduced by the Plaintiffs. Based on Mr. Todd's affidavit, the Defendants would have us believe that Prolease Atlantic operates its business strictly within the boundary lines of Pennsylvania. However, in light of the facts of record, it appears that Prolease Atlantic not only has another location in Maryland, but this location plays the central role in the day-to-day operations of its business.

### III. CONCLUSION

After considering all the facts on this record, the Court concludes that, at the time of the commencement of this action, Prolease Atlantic's principal place of business was located in Maryland, not Pennsylvania. Under the "center of corporate activities" test, the Court finds that Maryland was the "headquarters of day-to-day corporate activity and management" of Prolease Atlantic. *Kelly*, 284 F.2d at 854. Since the Court has determined that Maryland is Prolease Atlantic's principal place of business, it follows that Prolease Atlantic is thereby deemed a citizen of Maryland. 28 U.S.C. § 1332(c)(1). As a result of finding that Prolease Atlantic is a Maryland citizen, complete diversity exists between the parties. Accordingly, this Court has subject matter jurisdiction over this action based on complete diversity.

An appropriate Order follows.

### ORDER

AND NOW, this 13th day of March, 2002, upon consideration of Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. No. 48), and any

Response thereto, it is hereby ORDERED that the Motion is DENIED.