# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 04-2936

CURTIS WEINSTEIN,

*Plaintiff-Appellant,*

v.

JAMES L. SCHWARTZ, MICHAEL
WEINSTEIN, and LISSA WEINSTEIN,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 7972—**Suzanne B. Conlon**, *Judge.*

_____

ARGUED MAY 5, 2005—DECIDED SEPTEMBER 1, 2005

_____

Before BAUER, EASTERBROOK, and MANION, *Circuit Judges.*

MANION, *Circuit Judge.* Herbert Weinstein, the founder of Parsons Tanning Company, transferred all of the company stock to his four children in equal shares. A dispute arose among the siblings over whether to sell a farm that the company owned. Curtis Weinstein, who opposed the sale, sued for a declaratory judgment that his brother and sister, Michael and Lissa, do not own the shares they pledged as collateral for a loan. The District Court for the Northern District of Illinois granted summary judgment in favor of Michael and Lissa, as well as in favor of company attorney

James Schwartz on Curtis's claim of attorney malpractice.[1] Curtis appeals and we affirm.

## I.

Herbert Weinstein formed Parsons Tanning Company (Parsons), a Delaware corporation, in 1964. Herbert was the sole shareholder of Parsons until 1990 when he transferred all 600 outstanding shares in equal amounts to his four children, Curtis, Richey, Michael, and Lissa.

Parsons owns an 88-acre farm (the "Upper Farm") near Lake Geneva, Wisconsin. Parsons does not operate the Upper Farm any longer, but, instead, rents the farm to Curtis who runs his own horse breeding business.

Lissa and Michael are interested in selling the farm and intended to propose the sale at a shareholder meeting. It appears that Richey (who is not a party to this litigation) would have voted his shares to sell the farm, thus giving Lissa and Michael the necessary votes to approve the sale.

Before a shareholder vote could take place, Curtis, who opposes the proposed sale, filed this suit. In it, he seeks a

---

[1] Curtis's appeal with respect to Schwartz is waived for failure to adequately develop his argument. His treatment of the matter in his opening brief is cursory, and he fails in both his opening and reply briefs to cite to any legal authority setting forth the appropriate legal standard for resolving his claim. The failure to develop an argument constitutes a waiver. *See Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n.1 (7th Cir. 2004) ("We have repeatedly made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues).") (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)).

declaratory judgment that Michael and Lissa do not actually own shares of Parsons. Curtis claims that Michael conveyed his shares to Lissa in 1995 in an effort to avoid creditors. He further alleges that Lissa then pledged the 300 shares as collateral to secure a loan to Lissa and Michael from a second company owned by family members, Grenier Corporation International ("GCI"). In 2000, GCI sent Lissa and Michael a notice of default on the loan and, in 2001, a notice of sale of the collateral. The shares, however, have never been sold.

Curtis, Richey, and their stepmother Joan own all the outstanding shares of GCI. According to Curtis, there are 650 outstanding shares of GCI—he and Richey each own 200, and Joan owns 250. Apparently, however, Curtis believes he has effective control of GCI (presumably he knows, or believes, that Joan will side with him in this matter) such that if GCI is the owner of the 300 shares of Parsons that Lissa pledged, he can direct it to vote its shares against the sale of the Upper Farm. With all of this maneuvering, the issue comes down to this: if GCI owns the shares, Curtis can block a sale of the Upper Farm; if Michael and Lissa (or Lissa alone) own the disputed shares, they can force a sale of the Upper Farm.

Michael and Lissa moved for summary judgment, and the district court granted the motion. The court ruled that, although Curtis could show that there was a dispute as to whether Michael or Lissa owned the 150 shares originally belonging to Michael, Curtis could not show that GCI owned the 300 disputed shares because no sale of the shares had taken place. This appeal followed.

## II.

### A. Subject Matter Jurisdiction

Before we can address the subject of this appeal, the summary judgment ruling of the district court, we must resolve a matter of jurisdiction we raised *sua sponte* at oral argument. Curtis filed this case as a derivative suit, that is, Curtis sued Lissa and Michael on behalf of Parsons. Curtis asserted that the district court and this court had jurisdiction to entertain this suit pursuant to 28 U.S.C. § 1332 based on the diverse citizenship of the parties: Curtis is a citizen of Wisconsin; Lissa and Michael are citizens of Illinois; and Parsons is a citizen (for diversity purposes) of Delaware and Wisconsin.

Pursuant to *Smith v. Sperling*, 354 U.S. 91, 97-98 (1957), however, a corporation is aligned as a defendant in a shareholder's derivative suit. Accordingly, if the suit remains as it is, there is not complete diversity of the parties—Parsons, a Wisconsin citizen, would be treated as a defendant opposed to Curtis, another Wisconsin citizen.

Must the suit continue as a derivative action, however? That is, under Delaware law (the governing law on this issue, *Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 382-83 (7th Cir. 1990)), must a shareholder seeking declaratory judgment as to the ownership of the shares of a Delaware corporation proceed derivatively? We do not believe he must.

A derivative suit "enables a stockholder to bring suit on behalf of the corporation for harm done to the corporation." *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004). "The fundamental purpose of a derivative action is to enforce a corporate right that the corporation has refused for one reason or another to assert." R. Franklin Balotti & Jesse A. Finkelstein, *The Delaware Law of Corpora-*

*tions & Business Organizations* § 13.9 (3d ed. 1997 & 2005 supp.).

In a derivative suit, "the recovery, if any, must go to the corporation." *Tooley*, 845 A.2d at 1036. This is in contrast with a direct suit by a shareholder. "Such a claim [an individual suit] is distinct from an injury caused to the corporation alone. In such individual suits, the recovery or other relief flows directly to the stockholders, not to the corporation." *Id.*

The Delaware Supreme Court recently clarified the analysis for determining whether an action should be classified as direct or derivative: "The analysis must be based solely on the following questions: Who suffered the alleged harm—the corporation or the suing stockholder individually—and who would receive the benefit of the recovery or other remedy?" *Id.* at 1035.

Using this analysis, it is apparent that Curtis's claim is a direct claim. The alleged harm is to Curtis—he will, according to his complaint, be deprived of the use of the Upper Farm for his horse business if Michael and Lissa own the disputed shares because they will approve the sale of the Upper Farm. Likewise, the "remedy" would inure to Curtis's benefit—if GCI is declared to be the party entitled to vote the disputed shares, Curtis can block the sale of the Upper Farm. Because Curtis's claim is not a derivative claim, we have, as did the district court, jurisdiction to consider it.[2]

---

[2] Curtis has moved this court (without objection from the defendants) to dismiss Parsons as a dispensable nondiverse party. Because Curtis's claim is not derivative, Parsons is not an indispensable party. Curtis's motion, therefore, is permissible

(continued...)

### B. Summary Judgment

Having resolved the jurisdictional question, we proceed to the merits of the district court's decision. Curtis has all but conceded the crucial element of his case: GCI does not own the disputed shares. Curtis concedes that a sale of the disputed shares never took place. In other words, even assuming that Curtis is right and Michael and Lissa pledged their shares as collateral for a loan from GCI, none of this matters because GCI does not own the shares.

GCI, as the secured party, has not sold or otherwise disposed of the shares. Simply taking the shares and keeping them (retention) is not a permissible means of disposing of collateral under Delaware's version of the Uniform Commercial Code. 6 Del. C. § 9-610; *In re Copeland*, 531 F.2d 1195, 1207 (3d Cir. 1976) (decided under prior law). A secured party does not acquire ownership of pledged collateral simply because the debtor defaults on a loan. There is a process for transferring ownership that must be followed. That process has not been completed in this case.

Further, under Delaware law, shares pledged as collateral by a shareholder can still be voted by the shareholder. 8 Del. C. § 217(a) ("Persons whose stock is pledged shall be entitled to vote, unless in the transfer by the pledgor on the books of the corporation such person has expressly empowered the pledgee to vote thereon, in which case only the pledgee, or such pledgee's proxy, may represent such stock

---

[2] (...continued)
pursuant to *Newman-Green v. Alfonzo-Larrain*, 490 U.S. 826, 837 (1989). Accordingly, we GRANT the motion and dismiss Parsons as a party. We have recaptioned the case to reflect only the current parties: Curtis, Michael, and Lissa Weinstein, and James Schwartz.

and vote thereon."). As the district court put it, Curtis's real dispute is with GCI for failing to act when Michael and Lissa defaulted on its loan to them. Until GCI does act (by disposing of the shares), Michael and Lissa (or Lissa if she has control of all the shares—an issue we need not resolve) remain free to vote the shares as they please. The district court did not err in granting summary judgment.

AFFIRMED

A true Copy:

      Teste:

                         _____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*