**In re PENN CENTRAL SECURITIES LITIGATION.**

**M.D.L. Docket No. 56.**

United States District Court,
E. D. Pennsylvania.

Dec. 6, 1971.

See also, Jud.Pan.Mult.Lit., 333 F. Supp. 382.

Robert W. Blanchette, Edwin P. Rome, Marvin Comisky, Morris L. Weisberg, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for Trustees of the Property of Penn Central Transportation Co.

David Berger, David Berger, P.A., Philadelphia, Pa., Alfred S. Julien, New York City, Liaison Counsel for plaintiffs.

Donald J. Farage, Farage & Shrager, Philadelphia, Pa., for defendant Penn Central Co.

## OPINION AND ORDER

JOSEPH S. LORD, III, District Judge.

The Trustees in reorganization for the Penn Central Transportation Company (herein referred to as "Transportation Co.") have moved to intervene as of right as parties-plaintiff pursuant to F.R.Civ. P. 24(a) (2) and to be given exclusive control of thirteen (13) suits [1] which are part of the Penn Central Securities Litigation, M.D.L. Docket No. 56. The Penn Central Company (herein referred to as "Holding Co.") has cross-petitioned to be realigned as a party-plaintiff and to be given exclusive control of all of the cases in M.D.L. Docket No. 56. The shareholder-plaintiffs (herein referred to as "plaintiffs"), who commenced the M.D.L. Docket No. 56 suits, oppose both motions.

The Penn Central Securities Litigation involves numerous lawsuits filed by stockholders and bondholders of the related Penn Central companies. The suits allege violations of common law duties and federal securities laws by Penn Central companies, their present and former directors and officers and others. Opinion and Order of the Judicial Panel on Multidistrict Litigation, January 25, 1971. The suits include derivative actions commenced by the stockholders on behalf of Penn Central companies as well as direct claims by stockholders and bondholders against the defendants.

At the outset, it is important to distinguish the derivative actions from the direct or individual claims.

"If the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, as where the action is based on a contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly, it is an individual action. On the other hand, if the wrong is primarily against the corporation, the redress for it must be sought by the corporation, except where a derivative action by a stockholder is allowable, and a stockholder cannot sue as an individual. The action is derivative, i. e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets." 13 W. Fletcher, Corporations § 5911 at 285 (1970).

The motions under consideration relate only to the derivative causes of action raised in the stockholders' suits. In essence, both Transportation Co. and Holding Co. support their motions on the ground that because a stockholder's

1. M.D.L. Docket No. 56: 70–2010; 70–2137; 70–2320; 70–2596; 70–2696; 70–2818; 70–2933; 71–266; 71–267; 71–268; 71–277; 71–278; 71–280.

derivative suit asserts a cause of action on behalf of the corporation, the corporation can take over the litigation of its own claim. Transportation Co. and Holding Co. do not, and could not, seek to become parties to or gain exclusive control of the individual claims of the stockholders and bondholders because by definition the corporation is not the injured party in such actions.

The petitions before us raise two separate issues with respect to Transportation Co. and Holding Co.:

(1) Should the Trustees of Transportation Co. be permitted to intervene as parties-plaintiff and/or should Holding Co. be permitted to realign itself as party-plaintiff in the derivative actions commenced by the stockholders; and

(2) Should either Transportation Co. or Holding Co. be given exclusive control of all or any part of the litigation.

Although two issues are raised on the face of the petitions, there is, in fact, little dispute over whether Transportation Co. or Holding Co. should be permitted to take part in the suits on the basis of their respective interests in the claims raised derivatively on their behalf. Rather, the dispute centers primarily on

(1) What are the respective interests of Transportation Co. and Holding Co. in the derivative claims; and, more importantly,

(2) Whether the interests of either Transportation Co. or Holding Co. justify the court in granting exclusive control of all or any part of the litigation to either party.

## I. INTEREST OF TRANSPORTATION CO. AND HOLDING CO. IN CLAIMS FOR INJURIES TO PENN CENTRAL COMPANIES

In order to determine the respective interests of Transportation Co. and Holding Co. in the pending derivative actions, it is necessary to review the evolution of the present corporate relationship of the two companies.

(1) In 1846, the Pennsylvania Railroad Company was organized as a corporation under a special act of the Legislature of the Commonwealth of Pennsylvania.

(2) On February 1, 1968, the New York Central Railroad Company merged with the Pennsylvania Railroad Company, and the resulting corporation was known as the Pennsylvania New York Central Transportation Company. On May 8, 1968, the corporation name was changed to Penn Central Company (herein referred to as "Penn Central Co. (#1)").

(3) On April 1, 1969, a corporation known as Penn Central Holding Company was organized under the laws of the Commonwealth of Pennsylvania. Also, on April 1, 1969, a corporation known as PCT Company was organized under the laws of Pennsylvania as the wholly owned subsidiary of Penn Central Holding Co.

(4) On May 13, 1969, the shareholders of Penn Central Co. (#1) approved a plan of merger and reorganization which provided for PCT Company to merge into Penn Central Co. (#1). The holders of shares of stock of PCT Co. and Penn Central Co. (#1) participated in the following exchange of shares of stock:

(a) Penn Central Holding Co., the owner of all the stock of PCT Co., received in exchange for the PCT Co. stock all the stock of Penn Central Co. (#1);

(b) All the shareholders of Penn Central Co. (#1) received the same number of shares of stock of Penn Central Holding Co. as they then held in Penn Central Co. (#1);

(c) All of the stock of PCT Co. was thereafter cancelled.

(5) On October 1, 1969, the plan of merger and reorganization was consummated. The corporation resulting from the merger of PCT Co. into Penn Central Co. (#1) changed its name, effective October 1, 1969, to Penn Central Transportation Company (Transportation Co.). This corporation is the Debtor in proceedings No. 70–347 in this District

before the Hon. John P. Fullam (the Reorganization Court) and the Trustees are the trustees of its property. On October 1, 1969, the Penn Central Holding Co. changed its name to Penn Central Company (Holding Co. or Penn Central Co. (#2)).

(6) As a result of the plan of merger and reorganization, all the stock of Transportation Co. is presently owned by Holding Co. and all the stock of Holding Co. is publicly owned.

(7) Before June 21, 1970, when Transportation Co. filed its petition for reorganization, the directors and officers of Transportation Co. interlocked with the directors and officers of Holding Co. Motion of Trustees of the Property of Penn Central Transportation Company to Intervene as Parties-Plaintiff, July 1, 1971, pp. 2–4.

Three categories of corporate claims are therefore asserted in the derivative actions:

(1) Injury to the railroad corporations which existed before October 1, 1969;

(2) Injury to Transportation Co. since October 1, 1969; and

(3) Injury to Holding Co. since October 1, 1969.

All parties agree that the Trustees of Transportation Co. have exclusive possession of all assets of Transportation Co.

including choses in action, and therefore the Trustees represent whatever interests of Transportation Co. are raised by the derivative suits.[2] Memorandum in Support of Motion of the Trustees to Intervene, July 1, 1971, pp. 1–3; Plaintiffs' Supplemental Memorandum in Opposition to Trustees' Motion to Intervene, July 19, 1971, p. 2; Penn Central Co.'s Memorandum Contra Motion of Trustees to Intervene, July 2, 1971, p. 2. The task facing the court is therefore to determine what interest Transportation Co., through its Trustees, has in the pending derivative actions.

### A. Pre-1969 Claims

The first issue in dispute is what interest, if any, does Transportation Co. have in the claims for injury to the railroad corporations which existed before October 1, 1969. Both the plaintiffs and Holding Co. argue that Transportation Co. has existed only since October 1, 1969 and therefore the Trustees cannot exercise power over claims of any railroad corporation which existed before that date. The Trustees argue that Transportation Co. is the successor in interest to Penn Central Co. (#1) and the Trustees, as representatives of Transportation Co., can assert the claims for injury to the railroad corporations which existed before October 1, 1969. For the reasons stated below, we have concluded that the Trustee's position is correct.

2. On June 21, 1970, Transportation Co. filed for reorganization pursuant to Section 77 of the Bankruptcy Act (11 U.S. C.A. § 205). Upon approving Transportation Co.'s petition, the Reorganization Court assumed exclusive jurisdiction of the Debtor and its property including causes of action which inure to the benefit of the Debtor. Section 77(a), Bankruptcy Act, 11 U.S.C.A. § 205(a); Ex parte Baldwin, 291 U.S. 610, 54 S.Ct. 551, 78 L.Ed. 1020 (1934); Porter v. Sabin, 149 U.S. 473, 13 S.Ct. 1008, 37 L.Ed. 815 (1893). The Reorganization Court has authorized and empowered the Trustees to institute or prosecute all suits and proceedings as may be necessary in its judgment for the recovery or proper protection of the property and rights of Transportation Co. Order No. 1, June 21, 1971; Order No. 20, July 22, 1970.

The Trustees argue that most of the causes of action commenced by the shareholders of Holding Co. are asserted, in whole or in part, derivatively on behalf of Transportation Co., and therefore the Trustees should be permitted to intervene in and control the prosecution of these suits in order to assert and protect the interests of Transportation Co. Although plaintiffs and Holding Co. acknowledge that the Trustees of a bankrupt have exclusive possession of all assets of the bankrupt, they deny that the majority of the derivative actions commenced by the plaintiffs include claims which are part of the bankrupt estate over which the Trustees have control and that therefore the Trustees should not be given exclusive control of the litigation.

1. *Merger of the Pennsylvania Railroad and New York Central Railroad Company*

Holding Co. contends that the merger of the Pennsylvania and New York Central Railroads resulted in the creation of "an entirely new entity" whose separate corporate status was recognized by Penn Central Co.'s (#1) relinquishment of its 1846 charter and election to be chartered under the Pennsylvania Business Corporation Law. The Trustees state that the New York Central Railroad merged *into* the Pennsylvania Railroad Company and the surviving corporation (Penn Central Co. (#1)) was a continuation of the Pennsylvania Railroad Company and not a new entity. The effect of the 1969 reorganization and rechartering of Penn Central Co. (#1) will be examined *infra*, Section 2. However, it is first necessary to examine the argument that the 1968 Pennsylvania and New York Central merger in effect ended the corporate existence of both companies so that the resulting corporation (Penn Central Co. (#1)) could not assert claims for injuries done to either the Pennsylvania or New York Central Railroads before the merger.

Holding Co. bases its argument on the fact that the merger added miles of tracks, new employees, new places of business, new yards and new officers and directors to the Pennsylvania Railroad, and therefore, the railroad was not the same entity as it was before the merger. From the fact that the merger added new assets to the Pennsylvania Railroad, Holding Co. concludes that the previous corporate existence of the Pennsylvania Railroad was ended. No one, however, disputes the fact that mergers often increase the assets of the resulting corporation. The issue here is not whether the resulting corporation succeeded to the assets of the corporations involved in the merger but whether it succeeded to the rights of these corporations to causes of action for injuries which occurred to the corporations before the merger. Holding Co. admitted that the resulting corporation, the Penn Central Co. (#1), proceed-ed to conduct business under the 1846 Pennsylvania legislative charter originally granted to the Pennsylvania Railroad from the time of the merger until the corporation elected to be covered by the Pennsylvania Business Corporation Law. This fact undermines any argument that the merged system is an entirely new corporation and supports the Trustees' analysis that the New York Central merged into the Pennsylvania Railroad which became the surviving corporation in the merger. Holding Co. has not offered this court any evidence to support its conclusion that the corporation which resulted from the merger, *i. e.,* Penn Central Co. (#1), did not succeed to the rights and interests of the corporations which were parties to the merger.

2. *Election to be Chartered under Pennsylvania Business Corporation Law and Filing of Restated Articles of Incorporation*

Both Holding Co. and plaintiffs cite the fact that contemporaneously with the reorganization of Penn Central Co. (#1) into Transportation Co. and Holding Co., Penn Central Co. (#1) filed an election to be chartered under the Pennsylvania Business Corporation Law and filed restated Articles of Incorporation to conform to the law. Plaintiffs and Holding Co. conclude that the Penn Central Co. (#1) reincorporated itself into a new entity which did not succeed to the rights and claims of the pre-existing corporation. Rather, the shareholders of the former railroad corporation (Penn Central Co. (#1) as chartered in 1846) and not Transportation Co. succeeded to all claims of the former corporation. The Trustees deny that the 1969 rechartering of Penn Central Co. (#1) affected the perpetual existence of the Company.

Neither the language of the Pennsylvania Business Corporation Law, 15 Pa. Stat.Ann. §§ 1001–2203 (1968), nor the language of the Penn Central Company (#1) Proxy Statement of April 10, 1969 requesting stockholder approval of

the charter election and restated Articles supports the argument of plaintiffs and Holding Co. that a re-incorporation of Penn Central Co. (#1) resulted from the Company's election to be chartered under the Pennsylvania Business Corporation Law.

The proxy statement discusses the effect of the proposal to become subject to the recently revised Business Corporation Law and to file restated Articles of Incorporation under the law as follows:

"The effect of the proposed restated Articles will be to continue the present name of the Company, its registered office in the Commonwealth of Pennsylvania, its *perpetual existence* * *. The corporate powers of the Company would be expanded to include all lawful business in addition to its presently more limited charter powers to engage in railroad and other transportation operations and in businesses and activities related to those operations. The Company has no present plans to enter directly into other lines of business; nevertheless, the Board of Directors believes that the Company should not be restricted by its charter to railroad and related operations." (Proxy Statement, April 10, 1969, p. 5) (Emphasis added).

The 1968 amendments to the Business Corporation Law permitted railroad corporations, which previously could not elect to be covered by the law, to elect to accept the provisions of the act. 15 Pa.Stat.Ann. § 1004, subd. B(2) (ii–iii). It appears that Penn Central Co. (#1) believed it to be in the Company's best interest to take advantage of the expanded corporate powers provided by the new law. The Company did not intend to affect the perpetual existence of the corporation by its election.

■ It is clear from the Business Corporation Law that the statute does not affect the corporate existence of existing corporations which either are required to become subject to the law or elect to be covered by it. The purpose of the law is stated as follows:

"This act and its amendments are intended to provide uniform rules for the government and regulation of the affairs of business corporations * * regardless of the date or manner of incorporation or qualification * * *." (15 Pa.Stat.Ann. § 1005, subd. D).

Existing domestic corporations which elect to be covered by the law are required to file a certificate with the Department of State which sets forth "(i) the name and address of the corporation; (ii) the act of Assembly by or under which it was incorporated; and (iii) a statement that the board of directors of the corporation has elected to accept the provisions of this act for the government and regulation of the affairs of the corporation," and the act becomes applicable to the corporation when the Department of State files the certificate. 15 Pa.Stat. Ann. § 1004, subd. C(2). The statute does not refer to any effect on the corporation's existence as a result of the election procedure nor would the drastic effect proposed by plaintiffs and Holding Co. appear warranted as the consequence of this brief, formal procedure.

■ The Business Corporation Law also authorizes a corporation within its purview to amend its articles of incorporation for a number of purposes including "to restate the articles in their entirety." 15 Pa.Stat.Ann. § 1801(6) and the law provides that "[n]o amendment shall affect any existing cause of action in favor of or against the corporation * * *." 15 Pa.Stat.Ann. § 1809. We therefore conclude that Penn Central Co.'s (#1) election to relinquish its 1846 charter in favor of the Business Corporation Law and the filing of restated articles of incorporation did not affect the continuous corporate existence of the Company or its right to assert claims for injuries to it before the effective date of its election.

3. *Merger and Reorganization Plan which Created Transportation Company and Holding Company*

The Penn Central Co.'s (#1) Proxy Statement of April 10, 1969 described the

merger and reorganization plan which created Transportation Co. and Holding Co. as a means of diversifying the Company's interests. The effect upon the stockholders of Penn Central Co. (#1) was stated to be the "transfer [of] their investment into stock of a holding company which will own all of the stock of the present company." Proxy Statement, p. 5. This result was achieved by the creation of two new companies: (1) PCT Co. which was a subsidiary of (2) Penn Central Holding Co. The subsidiary, PCT Co., was then merged into Penn Central Co. (#1) as the result of the stock transfer outlined *supra*. The Penn Central Holding Co. then changed its name to Penn Central Co. (herein referred to as "Holding Co." or "Penn Central Co. #2"), and Penn Central Co. (#1), into which PCT Co. had merged, changed its name to Penn Central Transportation Co. (herein referred to as "Transportation Co.").

■ The merger was effected under the Pennsylvania Business Corporation Law which provides:

> "Upon the merger or consolidation becoming effective, the several corporations parties to the plan of merger or consolidation shall be a single corporation which, in the case of a merger, shall be that corporation designated in the plan of merger as the surviving corporation * * *. The separate existence of all corporations parties to the plan of merger or consolidation shall cease, except that of the surviving corporation, in the case of a merger. * * * All the property, real, personal and mixed * * * and all debts due on whatever account to any of them, including * * * other choses in action belonging to any of them, shall be taken and deemed to be transferred to and vested in the surviving or new corporation, as the case may be, without further act or deed." 15 Pa.Stat.Ann. § 1907.

Transportation Co., the surviving corporation in the merger of PCT Co. into Penn Central Co. (#1), succeeded to the interests of Penn Central Co. (#1), and therefore Transportation Co. through its Trustees is entitled to bring suit to recover for any injuries to the railroad corporations which existed before October, 1969. Holding Co. did not exist before October 1, 1969, and therefore, Holding Co. has no interest in nor did it succeed to any interest in pre-October, 1969 railroad claims by virtue of the transfer of its stock in PCT Co. for the stock of Penn Central Co. (#1).

### B. *Post-1969 Claims*

The second issue in dispute is the determination of the respective interests of Transportation Co. and Holding Co. in the claims for injuries which occurred after October 1, 1969 (herein referred to as "Post-1969 Claims"). As noted above, there is no doubt that the Trustees have exclusive possession of the debtor's assets, including choses in action. However, the question here is whether the post-1969 claims in which the Trustees seek to intervene are those of their debtor, Transportation Co., or are those of Holding Co.

The Trustees of Transportation Co. argue that for the substantive purposes of this litigation this court should consider the stock of Holding Co. as the stock of Transportation Co. and therefore should find that all post-1969 claims belong to Transportation Co. The Trustees base their argument on the following points: (1) Holding Co. was created to act as a conduit corporation between the public and Transportation Co.; (2) the principal assets of Holding Co. are the shares of Transportation Co.; and (3) before June 21, 1970, when Transportation Co. filed its petition for reorganization, the directors and officers of Holding Co. interlocked with the directors and officers of Transportation Co. and Holding Co. was in fact controlled by Transportation Co. The Trustees urge this court to pierce the corporate veil of Holding Co. and to find Transportation Co. is the sole beneficiary of the derivative claims in the pending litigation.

Holding Co. objects to the Trustees' position on the grounds that (1) from its inception, Holding Co. engaged in business that was separate and distinct from Transportation Co.'s operations and (2) the court should not use its equitable powers to pierce the corporate veil of Holding Co. for the benefit of Transportation Co. when Transportation Co. caused the incorporation of Holding Co.

Although courts have the power to disregard corporate entities, this power is only to be used in exceptional circumstances.

"* * * [A]ny court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception." Zubik v. Zubik, 384 F.2d 267, 273 (C.A.3, 1967), cert. den. 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968).

In order for the Trustees to prevail, they must satisfy two tests: (1) they must establish that Transportation Co. so controlled Holding Co. as to make Holding Co. a mere instrumentality or conduit of Transportation Co. and (2) they must show that fraud, illegality, injustice or the defeat of public policy will result if the court does not pierce the corporate veil of Holding Co. Zubik v. Zubik, 384 F.2d at 272; Pasos v. Ferber, 263 F. Supp. 877, 881–882 (M.D.Pa.1967), aff'd 386 F.2d 452 (C.A. 3, 1967); Gagnon v. Speback, 389 Pa. 17, 21, 131 A.2d 619 (1957); 1 W. Fletcher, Corporations §§ 41–43 (1963).

"The control necessary * * * is not mere majority or complete stock control but such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal." 1 W. Fletcher, Corporations § 43 at 204–205 (1963).

Even ownership of all the stock of a corporation coupled with a common management does not operate as a merger of the two corporations into a single entity. Overstreet v. Southern Railway Company, 371 F.2d 411 (C.A. 5, 1967), cert. den. 387 U.S. 912, 87 S.Ct. 1700, 18 L.Ed.2d 634 (1967); Maule Industries, Inc. v. Gerstel, 232 F.2d 294 (C.A. 5, 1956); 1 W. Fletcher, Corporations § 43 (1963). Therefore, the fact that the directors and officers of Transportation Co. interlocked with Holding Co. in itself is insufficient to establish Transportation Co.'s control of Holding Co. for the purpose of disregarding the corporate entity.

The Trustees have not established that any fraud, illegality, injustice or the defeat of public policy will result if the court does not disregard the separate corporate existence of Holding Co. The corporate form is not being used here to shield the corporation from its responsibilities or liabilities to the detriment of anyone. The Trustees, in essence, urge this court to pierce the corporate veil in order to support their claim for exclusive control of the thirteen pending derivative suits cited. The Trustees have not established any injustice warranting disregard of the corporate existence of Holding Co. that would result if derivative claims are found to have been asserted on behalf of Holding Co.

Moreover, Holding Co. was established pursuant to a diversification program commenced by Transportation Co.'s predecessor in interest (Penn Central Co. (#1)). Courts have been reluctant to pierce the corporate veil on behalf of those who originally created the corporate structure.

"While corporate entities may be disregarded where they are made the implement for avoiding a clear legislative purpose, they will not be disregarded where those in control have deliberately adopted the corporate form in order to secure its advantages and where no violence to the legislative purpose is done by treating the corporate entity as a separate legal person." Schenley Dist. Corp. v. United States, 326 U.S. 432, 437, 66 S.Ct. 247, 249, 90 L.Ed. 181 (1945). See also Sams v. Redevelopment Authority, 431 Pa. 240, 244–245, 244 A.2d 779 (1968).

■■■■■ For the reasons stated above, we will not disregard the corporate existence of Holding Co., and we reject the Trustees' argument that all claims for post-1969 corporate injuries belong to Transportation Co. We must therefore now distinguish the post-1969 claims which belong to Transportation Co. from those which belong to Holding Co.[3]

Derivative claims on behalf of Holding Co. are characterized by the fact that they refer to transactions which allegedly harmed Holding Co. directly in its status as a corporation rather than indirectly as sole stockholder of Transportation Co. For example, Holding Co. acquired one hundred percent of the stock of two Texas oil refineries and created Penn Central International N.V. (herein referred to as "International") for the purpose of obtaining certain European financing. Any misconduct or breach of fiduciary duties by the directors and officers of Holding Co. with respect to either the refineries or International,[4] even though these individuals may have also been directors and officers of Transportation Co., would give rise to causes of action on behalf of Holding Co. Similarly, Holding Co. would be the proper party to prosecute any possible actions for violation of the federal securities law by the directors and officers of Transportation Co. or by Transportation Co. itself for fraud in inducing Holding Co. to issue its stock in exchange for Transportation Co. stock in 1969.

3. Two possible types of claims could have been raised by the derivative suits which were commenced by the shareholders of Holding Co. First, the shareholders could have, and did, bring derivative suits on behalf of Holding Co. for injuries sustained by Holding Co. in its status as a corporation. Second, the shareholders could have brought double derivative suits on behalf of Transportation Co. for injuries allegedly sustained by it. Double derivative suits are suits by the shareholders of a corporation (herein referred to as the "Parent" corporation) which itself owns stock in another corporation (herein referred to as the "Subsidiary" corporation). As a stockholder, the parent corporation could sue derivatively on behalf of the subsidiary to redress injuries to the subsidiary if the subsidiary refuses to sue on its own behalf. 6A W. Fletcher, Corporations § 2843 (1968). If both the subsidiary and parent corporations refuse to initiate actions for injuries to the subsidiary, the shareholders of the parent corporation can maintain a double derivative suit on behalf of the subsidiary. Wachsman v. Tobacco Products Corp., 42 F.Supp. 174, 177 (D.N.J. 1941), aff'd 129 F.2d 815 (C.A. 3, 1941). However, no double derivative suits on behalf of Transportation Co. have been brought in the thirteen derivative suits in issue because the plaintiffs have failed to name Transportation Co. or its Trustees as parties. See discussion of Trustees' Motion to Intervene, *infra*, Section II.

It is clear that all of the claims for injuries to the Penn Central complex which occurred before October 1, 1969, and some of the claims for injuries after October 1, 1969, belong to Transportation Co. Although the pending thirteen derivative suits name only Holding Co. as the party to whom these claims belong, the relief granted here will add the Trustees as additional parties and it is therefore necessary that the post-1969 claims of Holding Co. and Transportation Co. be distinguished so that the litigation of these claims by the proper parties can proceed.

4. Holding Co. states that after the petition for reorganization was filed by Transportation Co. in June, 1970, the former shareholders of the two oil refineries sued Holding Co. for recission alleging fraud in the inducement of sale. Holding Co. claims that if fraud was perpetrated by its officers and directors in inducing the sale and/or in managing the two companies after the sale, the wrongs were committed against Holding Co. In addition, Holding Co. states that it became the guarantor on notes issued by International. International became unable to pay the notes as they become due, and Holding Co. presently stands liable to creditors of International for approximately 39 million dollars. Holding Co. asserts that this is a debt of Holding Co., and if the directors and officers of Holding Co. fraudulently induced it to guarantee the notes, the wrong was done to Holding Co. Supplemental Memorandum on Behalf of Penn Central Co. in Support of its Motion for Realignment, September 16, 1971, pp. 6–7.

If Holding Co. becomes a plaintiff in the pending actions or if, as it has done, Holding Co. institutes a suit to assert directly causes of action in its favor,[5] Holding Co. may be able to raise direct or individual stockholder's claims for injuries sustained in its status as stockholder of Transportation Co.

Finally, because the directors and officers of Transportation Co. interlocked with the directors and officers of Holding Co. from October 1, 1969 until the petition for reorganization was filed, we will carefully consider whether acts of the directors and officers done on behalf of Transportation Co. during this period may give rise to causes of action for breach of their fiduciary duties to Holding Co.

As discussed above (Section I, A), the Trustees of Transportation Co. are the proper parties to raise claims for alleged wrongdoing to the railroad corporations which existed before October 1, 1969. In addition, any claims for alleged wrongdoing by the various defendants which led to the reorganization petition of Transportation Co. and claims for violations of the federal securities laws which injured Transportation Co. are proper subjects for actions by the Trustees.

## II. TRUSTEES' MOTION TO INTERVENE AS PARTIES–PLAINTIFF

The Trustees of Transportation Co. have moved to intervene as of right as parties-plaintiff pursuant to F.R.Civ.P. 24(a) (2) in thirteen derivative actions commenced by the shareholders of Holding Co. Rule 24(a) (2) sets forth three basic requirements for intervention as of right:

(1) The applicant claims an interest relating to the property or transaction which is the subject of the action;

(2) He is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest; and

(3) The applicant's interest is adequately represented by existing parties.

"Intervention may be defined as the procedural device whereby a stranger can present a claim or defense in a pending action or in a proceeding incidental thereto, and become a party for the purpose of the claim or defense presented." 3B, J. Moore, Federal Practice ¶ 24.02 at 24–31 (2d ed. 1969).

Transportation Co. is not named as a party in the thirteen cases in which it seeks to intervene. It is clear from the discussion above that the Trustees authorized by the Reorganization Court to represent Transportation Co. have a substantial interest relating to the property and transactions which are subject of the pending actions to satisfy the first requirement of Rule 24 (a) (2). However, the second requirement of Rule 24(a) (2) is not satisfied. The Trustees' interests will not, nor could they be, impaired or impeded by a disposition of these derivative suits because no disposition can be binding on a corporation in a derivative suit unless the corporation has been named as a party. The corporation is a necessary and indispensable party in a derivative suit brought on its behalf, and failure to join the corporation as a party to a derivative action is a fatal defect. Greenberg v. Giannini, 140 F.2d 550, 554 (C.A. 2, 1944). *See also* Price v. Gurney, 324 U.S. 100, 105, 65 S.Ct. 513, 89 L.Ed. 776 (1944); City of Davenport v. Dows, 18 Wall. 626, 21 L.Ed. 938 (1874); Marcus v. Textile Banking Co., 38 F.R.D. 185, 186 (S.D.N.Y.1965); 3A J. Moore, Federal Practice ¶ 19.13 [1] at 2379–2380 (2d ed. 1970); 3B J. Moore, Federal Practice ¶ 23.1.21 [1] at 23.1–301 (2d ed. 1969). Where a receiver or a trustee in proceedings for reorganization has been appointed for a corporation, he is an indispensable party to a stockholders' derivative

5. Penn Central Co. v. Bevan, et al. C.A. No. 71–1506, Eastern District of Pennsylvania, June 18, 1971.

suit. Coyle v. Skirvin, 124 F.2d 934 (C.A. 10, 1942), cert. den. 316 U.S. 673, 62 S.Ct. 1044, 86 L.Ed. 1748 (1942); Schmidt v. Esquire, Inc., 210 F.2d 908 (C.A. 7, 1954), cert. den. Schmidt v. Crowell-Collier Pub. Co., 348 U.S. 819, 75 S.Ct. 31, 99 L.Ed. 646 (1954).

■ It is therefore clear that in seeking to intervene in the thirteen derivative suits in which they are not named parties, the Trustees of Transportation Co. are attempting to cure a glaring defect in these suits although they have not chosen the proper method to achieve this end. Nevertheless, we find that the Trustees' petition to become parties-plaintiff to the actions cited must be granted in order to join indispensable parties and thereby confer upon the court the power to make an equitable adjudication of the claims raised on behalf of the Trustees in the thirteen suits which the court would lack if indispensable parties to the action were not before it. Boris v. Moore, 152 F. Supp. 602, 608–609 (E.D.Wisc.1957), aff'd 253 F.2d 523 (C.A.7, 1958); Kohler v. McClellan, 77 F.Supp. 308, 315 (E.D.La.1948); 3A J. Moore, Federal Practice, ¶ 19.05 [2] (2d ed. 1970).

■ F.R.Civ.P. 19(a), concerning joinder of persons needed for just adjudication, requires that the court shall order joinder of indispensable parties to an action. The fact that the movants here have not followed the proper method of seeking relief will not prevent the court from granting such relief when it is clearly required by the Federal Rules. When a corporation itself is attempting to cure a defect in a shareholder's derivative suit seeking relief on its behalf and thereby prevent delay and multiple suits, the court should aid such action. Therefore, we will order that the Trustees of the property of Transportation Co. shall be joined as parties-plaintiff in the thirteen pending derivative actions cited insofar as these actions assert claims on behalf of Transportation Co.

## III. TRUSTEES' MOTION TO BE GIVEN EXCLUSIVE CONTROL OF THE DERIVATIVE SUITS BROUGHT ON TRANSPORTATION CO.'S BEHALF

In addition to petitioning this court to become parties-plaintiff with respect to the interests of Transportation Co. in the thirteen derivative actions cited, the Trustees seek to be designated as exclusively in charge of discovery proceedings and trial. We will consider the Trustees' motion insofar as it relates to all pre-1969 claims for corporate injuries and those post-1969 claims for injury to Transportation Co. raised in the thirteen suits.

The Trustees base their request for exclusive control on the following grounds:

(1) The Trustees of the debtor Transportation Co. have been invested by the Reorganization Court with the exclusive right and duty to prosecute causes of action which inure to the benefit of Transportation Co.;

(2) The Trustees are prepared to prosecute directly causes of action which belong to the estate of Transportation Co. and therefore continued litigation of these actions in derivative form is unnecessary.

(3) Normally corporate rights may be asserted derivatively by shareholders because they are owners of the corporation. Plaintiffs here may have no standing because under the "fair and equitable" provisions of the Bankruptcy Act § 77 (c) creditors' interests must be compensated in full before shareholders can participate and therefore ownership of the corporation may rest among creditors.[6] Memorandum in Support of Motion of Trustees to Intervene, July 1, 1971, pp. 1–3; Reply Memorandum in Support of Motion of Trustees to Intervene, August 18, 1971.

Plaintiffs oppose Trustees' request to be given exclusive control of the actions

---

6. This argument we summarily dismiss as completely speculative.

brought derivatively on Transportation Co.'s behalf on the following grounds:

(1) A corporation on whose behalf a derivative suit is brought and which later decides to participate actively in the litigation cannot oust the shareholders from the suit but must proceed jointly with the shareholders in prosecuting the action.

(2) The Trustees do not adequately represent the interests of the Penn Central complex because in the reorganization proceedings they are seeking relief contrary to the claims of the shareholders' suits.

 The Trustees' petition for exclusive control emphasizes several unusual aspects of the pending derivative litigation as compared with the normal derivative suit. Derivative suits are suits brought by stockholders of a corporation in order to obtain relief for an alleged wrong committed against the corporation. The stockholders are the plaintiffs because the corporation has refused to sue in its own behalf; however, the corporation remains the real party in interest. F.R.Civ.P. 23.1 requires that before a stockholder can bring a derivative suit, he must make a demand on the corporation to sue, and when a corporation is in reorganization, the demand must be made upon the trustees. Zeleznik v. Grand Riveria Theater Co., 128 F. 2d 533, 536 (C.A. 6, 1942); 3B J. Moore Federal Practice ¶ 23.1.19 (2d ed. 1969). If the Trustees refuse to sue or if such demand would be futile, the stockholders are required to petition the Reorganization Court to either compel the Trustees to sue or authorize the stockholders to sue. Schmidt v. Esquire, Inc., *supra*, 210 F.2d at 913. In addition, the corporation must be named as a party to the action in order for the court to make any ruling binding upon it. See discussion, *supra*, Section II.

In the present case, the Trustees assert that no demand was ever made upon them by the plaintiffs to bring suit, no petition was made to the Reorganization Court, and neither they nor Transportation Co. are named as parties in the thirteen derivative suits. The property of Transportation Co. is subject to the exclusive jurisdiction of the Reorganization Court which has directed the Trustees to institute and prosecute such actions as in their judgment are necessary for the protection and preservation of the property and assets of the corporation. The Trustees seek to control the litigation of those claims raised in the pending derivative suits which relate to Transportation Co.'s interests, and the Trustees' motion for exclusive control is, in effect, a motion to dismiss the plaintiffs as parties to the litigation of Transportation Co.'s interests. Even assuming that the stockholders' suits named either Transportation Co. or the Trustees as parties, the relief sought is on behalf of the corporation and if the corporation or its representative is given exclusive control of the claims in the litigation brought on its behalf, there would no longer appear to be any function to be performed by the stockholders in remaining as plaintiffs in the litigation of those claims.

There are few cases which discuss whether a corporation may be substituted as the sole party-plaintiff in a derivative suit commenced by its stockholders. In Palmer v. Morris, 341 F.2d 577 (1965), the Fifth Circuit, in a *per curiam* decision, held that there was no justification for eliminating the stockholder who had commenced the derivative action merely because the corporation belatedly sought to prosecute the action itself. The only case cited in support of this decision was one which permitted a stockholder to intervene as party-plaintiff in an action commenced by the corporation where it appeared that it was due to the stockholder's diligence that the suit was commenced by the corporation at all and "an atmosphere of collusion" existed between the plaintiff corporation and the defendant. Twentieth Century-Fox Film Corp. v. Jenkins, 7 F.R.D. 197 (S.D.N.Y. 1947).

In General Investment Corp. v. Addinsell, 255 App.Div. 319, 7 N.Y.S.2d 377

(1938), the corporation on whose behalf the derivative suit was brought moved to be joined as co-plaintiff. The court held joinder was improper since by definition a derivative suit is based on the theory that the corporation is unwilling to sue and the corporation has indicated its willingness to sue by its motion. The clear implication of the decision is that if a corporation is to become a party-plaintiff in an existing suit brought on its behalf, the action can only be prosecuted as a direct action by the corporation and the stockholders can no longer be parties.

Lazar v. Merchants' National Properties, Inc., 22 A.D.2d 253, 254 N.Y.S.2d 712 (1964), held that a corporation on whose behalf a derivative action has been brought and which before suit had declined to sue may be substituted as plaintiff. In Lazar, there was no opposition by the original shareholder-plaintiffs to the corporation's motion to be substituted as plaintiff nor was there any evidence that the corporation would not prosecute the action in good faith.

 These cases suggest that in order for a corporation or its representative to take over control of an action instituted on its behalf by its stockholders, there must be no hint of collusion between the corporation and the defendants to the suit or evidence that the corporation may not prosecute the action in good faith. The Trustees of the property of Transportation Co. were appointed by the Reorganization Court. They have the duty to protect the property and rights of Transportation Co. and are answerable to the Reorganization Court. None of the Trustees is, or has ever been, an officer or director of Transportation Co. or Holding Co. The Trustees' fiduciary responsibilities require that they marshal the assets and protect the interests of the corporation-debtor. All actions taken by the Trustees are subject to the review by and approval of the Reorganization Court. It would therefore appear that a clear case has been established for the absence of collusion and the presence of good faith on the part of the Trustees in seeking to assume control of the litigation of the claims belonging to Transportation Co. raised in the thirteen derivative suits in issue.

The only argument adduced by the plaintiffs which possibly relates to the issue of the Trustees' good faith in prosecuting the actions is the fact that the Trustees have petitioned the Reorganization Court to return to former and present executives of Holding Co. and/or Transportation Co. a portion of the money they contributed to a deferred pension fund. Plaintiffs assert that in their various complaints they cite the granting of excessive pension benefits as one of the violations of law committed by Holding Co. and various defendants and plaintiffs seek to enjoin the defendants from receiving any pensions. Therefore, plaintiffs conclude that the Trustees, by their petition concerning pension funds, have demonstrated that they do not adequately represent the interests of the Penn Central complex and should not be given exclusive control of these actions.

We do not believe that the plaintiffs have established that the Trustees would not vigorously and adequately prosecute the interests of Transportation Co. if given exclusive control of the claims on Transportation Co.'s behalf in the thirteen suits in question. The fact that the Trustees and plaintiffs do not have the same view as to what is in the corporation's best interest and do not seek the same relief for the corporation on every claim does not mean that the Trustees do not adequately represent the interests of Transportation Co. or do not satisfy the requirements of the cases concerning entry of a corporation into a derivative suit raising claims on its behalf.

The pension funds are funds held by Transportation Co. and not by Holding Co. They are therefore within the exclusive control of the Reorganization Court which is charged with the duty and responsibility of protecting the assets of the debtor. We must and do assume that Judge Fullam will approve only that which will be in the best interests of Transportation Co., and hence, in-

directly in the best interest of Holding Co. We fail to perceive any possibility of injury to the plaintiffs arising from the Trustees' petition for the return of pension fund contributions.

In addition, the operative facts relevant to many of the claims of Holding Co., Transportation Co., and the direct actions of the stockholders are the same. Consolidated discovery and other pretrial procedures will permit the plaintiffs to maintain a watchful eye over the actions of the Trustees in the prosecution of the claims·of Transportation Co. and to object to any possible failure of the Trustees to perform their duties in good faith.

Finally, this court should consider the fact that these actions are brought on behalf of a corporation in reorganization which is attempting to marshal and protect its property in order to meet its financial obligations. In the absence of any compelling reason why Transportation Co.'s interests in the pending derivative actions cannot be fully protected by the Trustees, it is imperative that this court attempt to reduce the attorney fees arising out of this litigation in order to increase the amount that can possibly be recovered for the corporation.

Having shown no compelling reason why the interests of Transportation Co. in the pending thirteen derivative suits cannot be adequately prosecuted directly by the Trustees of Transportation Co., the plaintiffs are hereby dismissed as parties to the thirteen suits insofar as claims on behalf of Transportation Co. are asserted therein. The Trustees of the property of Transportation Co., as parties-plaintiff·in these actions with respect to Transportation Co.'s claims, have control of the prosecution of these claims subject to any subsequent orders of this court consolidating discovery proceedings and trial of these claims with discovery and/or trial of claims raised in M.D.L. Docket No. 56 on behalf of Holding Co. or other named or unnamed parties to the Penn Central securities litigation. We also grant the Trustees' request for leave to file a consolidated complaint embodying all claims asserted ·on behalf of Transportation Co. in the thirteen derivative suits in issue consistent with our decision in Section I defining Transportation Co.'s interests.

## IV. HOLDING CO.'S MOTIONS TO BE REALIGNED AS PARTY-PLAINTIFF AND FOR EXCLUSIVE CONTROLS OF THE DERIVATIVE SUITS

### A. Realignment

The court has .determined that the derivative suits brought by the shareholders of Holding Co. raise claims on behalf of Holding Co. for injuries which occurred after October 1, 1969. See Section I, B *supra*. Holding Co. has petitioned this court to be realigned as party-plaintiff in all cases on the M.D.L. Docket No. 56, in which causes of action on its behalf are asserted and the court will consider this motion insofar as it relates to those actions in which post-1969 claims on Holding Co.'s behalf are raised. Holding Co. is presently named as a defendant in the derivative suits.

The realignment of parties according to their interests is a significant issue in determining jurisdiction in diversity cases. 3A J. Moore, Federal Practice ¶ 19.03[1] (2d ed. 1970).

" * * * In a derivative action the corporation for whose benefit the action is brought is to be aligned as a plaintiff for the purpose of determining the existence of diversity, unless the corporation's· management has evidenced an antagonism toward the plaintiff's action either by a refusal to bring the action in its own behalf or by a showing of circumstances indicating that the corporation is controlled by persons who for any reason do not favor plaintiff's suit and, therefore, *do not or would not allow the corporation to sue.*" Tessari v. Herald, 207 F.Supp. 432, 435 (N.D.Ind.1962). *See also* Smith v. Sperling, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957); Swanson v. Traer, 354 U.S. 114, 77 S.Ct. 1116, 1 L.Ed.2d 1221 (1957);

Koster v. Lumbermen's Mutual Casualty Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947).

Because jurisdiction in the M.D.L. Docket No. 56 cases is founded on the federal securities laws and not on diversity, Holding Co.'s motion for realignment will have no effect on this court's jurisdiction. Nevertheless, we should still be concerned with the proper alignment of parties according to their interests when this issue is raised by the parties.

Holding Co. bases its argument for realignment on three points:

(1) No demand was made on the Board of Directors of Holding Co. to bring the actions which have been commenced in derivative form because the plaintiffs averred that such a demand would have been futile. However, after the bankruptcy of Transportation Co., an entirely new slate of directors took over control of Holding Co. The present directors had no connection with the company before January 1, 1971. Therefore, Holding Co. argues that a demand on the new Board to sue would not have been futile, and the new Board stands ready to prosecute the suits on the corporation's behalf.

(2) Holding Co.'s answers to the derivative suits' complaints directly contain cross-claims for damages and indemnification on Holding Co.'s behalf against each of the defendants.

(3) On June 18, 1971, Holding Co. instituted suit in this district (C.A. No. 71–1506) for causes of action which had previously only been asserted in derivative form against certain individuals and corporations, and therefore Holding Co. has demonstrated that it is ready, willing, and able to prosecute actions on its behalf.

The plaintiffs object to realignment on the grounds that (1) some of Holding Co.'s interests are opposed to those of the present plaintiffs and (2) the directors who caused the collapse of the Penn Central complex were in control of Holding Co. after the complaints in the present litigation were filed.

In order to establish that a corporation is antagonistic to the enforcement of the claims raised in the derivative suits, the shareholders must establish that the corporation is controlled by individuals whose interests are hostile to the action and who would therefore not prosecute the claims in good faith if the corporation was realigned as plaintiff. The hostile interest of the corporate management can be established by showing, for example, that management refuses to take action to undo a challenged transaction, that management's answers to the complaint do not deny the allegations of wrongdoing by directors and officers, or that the alleged wrongdoers against whom the derivative actions are brought still control the corporation. Smith v. Sperling, *supra*, 354 U.S. at 97, 77 S.Ct. 1112; Kennedy v. Blumeyer, 309 F.Supp. 939 (E.D.Mo.1969).

Plaintiffs have failed to provide any evidence to support their claims that Holding Co. is antagonistic to the enforcement of the derivative claims. Rather the evidence supports Holding Co.'s motion since Holding Co. has demonstrated its willingness to prosecute claims on its behalf both in its answers to plaintiffs' complaints and in filing its own suit to recover for wrongdoing by former directors and officers. Although at the time of the filing of the plaintiffs' complaints Holding Co.'s management may have been antagonistic to the prosecution of the claims, the present directors have no ties with the old management and the actions of the directors to date indicate their desire and ability to prosecute Holding Co.'s claims in good faith.[7] We therefore grant Holding Co.'s motion to be realigned as a party-plaintiff in the cases on the M.D.L. Docket No. 56.

B. *Exclusive Control*

Holding Co. also seeks to be given exclusive control over the litigation

---

7. We specifically limit our decision in this respect to cases where jurisdiction is not based on diversity of citizenship.

of the claims raised on its behalf in the derivative suits. The basis of Holding Co.'s motion, like the petition of the Trustees for similar relief, is the fact that derivative suits assert claims on behalf of the corporation and if the corporation is willing to prosecute these claims itself, the actions need not continue in derivative form. Before permitting a corporation to assume exclusive control over claims for corporate injuries originally asserted in a derivative suit, the court must be satisfied that the corporation will prosecute the action in good faith. *See* Section III, *supra*.

Plaintiffs have failed to provide any evidence that Holding Co. would not prosecute the actions in good faith, and we therefore grant Holding Co.'s motion for exclusive control over the claims asserted on its behalf in M.D.L. Docket No. 56. We recognize that the plaintiffs have charged the former directors and officers of Holding Co. with violations of the federal securities law extending over a substantial period of time and including a large number of transactions and that plaintiffs are concerned with the ability of Holding Co. to fairly and adequately prosecute these claims. We understand that plaintiffs would want to be parties to the prosecution of these claims in order to insure the fullest possible recovery to the corporation. We feel that Holding Co. will adequately protect these interests; however, we note that the claims of Holding Co., Transportation Co. and the shareholders in their individual capacities include many of the same issues. Therefore, the consolidated discovery procedures and trial of these issues will permit the plaintiffs to maintain a watchful eye over Holding Co.'s prosecution of its claims and to call the court's attention to evidence of possible bad faith prosecution by Holding Co. Finally, we also grant Holding Co.'s request for leave to file a consolidated complaint embodying all claims asserted on behalf of Holding Co. in all the cases on M.D.L. Docket No. 56 consistent with our decision in Section I defining Holding Co.'s interests.