Robert L. TAYLOR, Salvatore & Dorothy Di Paola, Arsen & Rose Mendoza, Michael & Margaret Picone, Leona Picone, Rosalee Feaser and Estate of Marium Clippinger

v.

Richard SWIRNOW, Land Holding, Inc., Riveria Construction Co., Inc., Amalgamated Land Holding, Inc., Bahama Belle, Inc., Heathrow Farms, Inc., Osterly Farms, Inc., Heston Farms, Inc., Gamber Farms, Inc., Doric Realty, Inc. and Mid State Housing, Inc., Charles Summers, Sheldon Dobres, William Manger, Individually and t/a Manger, Maxwell & Blanton, Monumental Title Co., Inc., William Dixon, Thomas Raimond, George J. Sybert, Chesapeake Financial Corporation formerly Weaver Brothers of Maryland, Inc., Sidney Tinley, Hugh Gambrill, American Continental Industries, Inc., Starts, Inc., Norob, Inc., Marvin Schien, Individually and as former trustee of American Continental Industries, Whitehurst Building Corp., Sydney Evnitz and Union Trust Company of Maryland, personal representative of the Estate of Sidney H. Tinley, Jr.

Civ. No. B–76–291.

United States District Court,
D. Maryland.

Aug. 18, 1978.

Mitchell Steven, Eugene Hettleman, Baltimore, Md., Robert W. Warfield, Severna Park, Md., for Swirnow defendants.

Michael P. Crocker, Piper & Marbury, Baltimore, Md., for Charles L. Summers.

Wilbur D. Preston, Jr., B. Ford Davis, Baltimore, Md., for Sheldon N. Dobres.

Gary A. Goldstein, Baltimore, Md., Trustee in Bankruptcy for American Continental Industries, Inc., Starts, Inc., and Norob, Inc.

Sidney Evnitz, Baltimore, Md., Daniel Pollack, Pikesville, Md., Ward B. Coe, Jr., Baltimore, Md., for William Manger.

Thomas A. Garland, Columbia, Md., for George J. Sybert and Thomas Raimond.

David L. Bowers, Miles & Stockbridge, Baltimore, Md., for Marvin Schein.

John T. Enoch, Baltimore, Md., for Warren Klawans.

David Freishtat, Michael L. Schwartz, Paul Mark Sandler, Freishtat & Schwartz, Baltimore, Md., for plaintiff.

Clarke Murphy, Jr., Paul Walter, Baltimore, Md., for Trustee.

William H. Holden, Jr., Weinberg & Green, Baltimore, Md., for Chesapeake Financial Corp. & Union Trust Co.

Charles C. W. Atwater, Baltimore, Md., for William Dixon and Monumental Title Co., Inc.

P. Dennis Belman, Columbia, Md., for H. Richard Belman and Belman Realty Co.

William A. Snyder, Jr., Michael H. Davis, Ober, Grimes & Shriver, Baltimore, Md., for Hugh H. Gambrill.

J. Frederick Motz, Baltimore, Md., for Chesapeake Financial Corp.

Richard W. Case, Robert J. Carson, Smith, Somerville & Case, Baltimore, Md., for Union Trust Co. of Maryland, Administrator of the Estate of Sidney H. Tinley, Jr., deceased.

Robert C. Prem, Patrick J. B. Donnelly, Niles, Barton & Wilmer, Baltimore, Md., for Union Trust Administrator of Estate of Tinley.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

This is a shareholder derivative action brought on behalf of American Continental Industries, Inc. (ACI) and two wholly owned subsidiaries of ACI—Starts, Inc. and Norob, Inc. Among the 10 named plaintiff shareholders, plaintiff Taylor owns more than 50% of the stock of ACI. ACI, Starts, and Norob are "nominally named" as defendants. Among the additional 24 defendants are Richard Swirnow and 10 corporations in which Swirnow allegedly held a controlling or substantial interest; Charles Summers, alleged to be the second largest shareholder and former president of ACI; Sheldon Dobres, a former secretary, counsel, and director of ACI; and other individuals and corporations. Jurisdiction is asserted on the basis of diversity of citizenship.

ACI, Starts, and Norob were in the business of real estate development in the late 1960's. The 56-page complaint alleges essentially that Swirnow, in combination with the other defendants, schemed in various ways to obtain personal control of land owned by ACI and to deplete ACI of its assets. The complaint asserts counts in fraud, negligence, and conspiracy.

ACI was adjudicated a bankrupt on April 3, 1969, and a trustee, Gary Goldstein, was appointed. Proceedings in the bankruptcy court remain pending. *In re American Continental Industries, Inc.*, Bankruptcy No. 13,500. Plaintiffs allege that on March 1, 1973 they made demand upon the trustee in bankruptcy to institute an action asserting the claims presented in the instant suit. The trustee allegedly refused but gave his consent for plaintiffs to bring suit. Plaintiffs did bring an action in this district substantially similar to this suit. *Taylor v. Swirnow*, Civil No. 73–261–N (D.Md., instituted March 21, 1973). However, on plaintiffs' motion Chief Judge Northrop dismissed the suit without prejudice to allow plaintiffs the opportunity to request authority from the bankruptcy court to proceed. Plaintiffs petitioned the bankruptcy court for authority to institute suit, but it appears that no express action has been taken on that petition. In the meantime, however, the trustee applied for authority from the bankruptcy court to abandon the cause of action that is at the heart of the instant suit. His application, opposed by a number of the defendants in this suit, was

granted by the bankruptcy court. The order of the bankruptcy court was affirmed on appeal to this court, and that decision was affirmed by the Fourth Circuit. *Chesapeake Financial Corp. v. Goldstein*, Civil No. B–77–153 (D.Md. May 12; 1977), *aff'd*, 577 F.2d 733 (4th Cir. 1978).

After various defendants filed motions asserting a number of grounds for dismissal, the court requested the parties to address the threshold question whether diversity jurisdiction exists. Defendants contend that ACI, Starts, and Norob, the corporations on whose behalf suit is brought, should be ordered realigned as plaintiffs, thereby destroying complete diversity of citizenship. Although the complaint is deficient in failing to allege with particularity the citizenship of all parties, it appears that most, if not all, of the defendants, including the three corporations, are citizens of Maryland. In any event plaintiffs concede that diversity jurisdiction would be defeated by realignment of the corporations.

■ Before turning to the question of realignment, it is appropriate to discuss briefly the proper roles in this litigation of the trustee in bankruptcy and the three corporations on whose behalf suit is brought. A cause of action is an asset or property right of the individual to whom it belongs; a cause of action belonging to a bankrupt vests in the trustee in bankruptcy. *Dallas Cabana, Inc. v. Hyatt Corp.*, 441 F.2d 865, 867 n.9 (5th Cir. 1971), and cases cited therein. Consequently, the bankrupt, or shareholders in a bankrupt corporation, cannot bring suit unless the trustee has abandoned the cause of action. *Id.* at 867–68. It has been stated otherwise that shareholders must petition the bankruptcy court for approval to bring suit. *E. g., Schmidt v. Esquire, Inc.*, 210 F.2d 908, 913 (7th Cir.), *cert. denied*, 348 U.S. 819, 75 S.Ct. 31, 99 L.Ed. 646 (1954). The court considers a grant of authorization to the shareholders to sue to be an equivalent alternative to permission to the trustee to abandon his claim. *See Dallas Cabana, Inc. v. Hyatt Corp., supra*, 441 F.2d at 868. In any event the court will assume for the purpose of

this Memorandum and Order that any approval required in this case was granted implicitly by the bankruptcy court's order permitting the trustee to abandon the cause of action.

■ The parties agree that the trustee is not and need not be made a party to the suit. It has been said that once shareholders receive permission from the bankruptcy court to press a derivative claim the trustee should properly be made a defendant to the suit. *Porter v. Sabin*, 149 U.S. 473, 478, 13 S.Ct. 1008, 37 L.Ed. 815 (1893); *United States v. Franklin National Bank*, 512 F.2d 245, 248 (2d Cir. 1975); *Schmidt v. Esquire, Inc.*, 210 F.2d 908, 912–13 (7th Cir.), *cert. denied*, 348 U.S. 819, 75 S.Ct. 31, 99 L.Ed. 646 (1954); *Coyle v. Skirvin*, 124 F.2d 934, 938 (10th Cir. 1942), *cert. denied*, 316 U.S. 673, 62 S.Ct. 1044, 86 L.Ed. 1748 (1942); *In re Penn Central Securities Litigation*, 335 F.Supp. 1026, 1037–38 (E.D.Pa.1971). In none of these cases, however, did the trustee abandon the cause of action as he did in the instant case. When a trustee abandons a cause of action or other property, it reverts to the bankrupt as if the trustee never held it. 4A Collier, Bankruptcy ¶ 70.42[4] at 512–14 (14th ed. 1976); *see In re Webb*, 54 F.2d 1065, 1067 (4th Cir. 1932). Because of the abandonment by the trustee which has been authorized by the bankruptcy court, the court concludes that the trustee need not be a party to this suit.

■ However, it is clear that in a derivative action the corporation for whose benefit suit is brought is a necessary party to the action; the corporation is "the real party in interest, the stockholder being at best the nominal plaintiff." *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970). The claim pressed by the shareholder " 'is not his own but the corporation's.' " *Id.* (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522, 67 S.Ct. 828, 831, 91 L.Ed. 1067 (1947)). All parties to the suit agree that the corporations now named as defendants—ACI, Starts, and Norob—are indispensable parties to the suit.

■ The fundamental principles concerning alignment of parties are clear:

> To sustain diversity jurisdiction there must exist an "actual," "substantial," controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is [the court's] duty . . . to "look beyond the pleadings and arrange the parties according to their sides in the dispute."

*Indianapolis v. Chase National Bank,* 314 U.S. 63, 69, 62 S.Ct. 15, 17, 86 L.Ed. 47 (1941) (citations omitted). Normally, a corporation on whose behalf a derivative action is brought would be expected to be aligned as a plaintiff because it is the real party in interest. However, derivative actions receive a "special dispensation" when the corporation is in "antagonistic hands." *Koster v. Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 522–23, 67 S.Ct. 828, 91 L.Ed. 1067 (1947); *see Doctor v. Harrington,* 196 U.S. 579, 25 S.Ct. 355, 49 L.Ed. 606 (1905).

■ The proper definition of antagonism was developed by the Supreme Court in the companion cases of *Smith v. Sperling,* 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957), and *Swanson v. Traer,* 354 U.S. 114, 77 S.Ct. 1116, 1 L.Ed.2d 1221 (1957). The existence of antagonism is to be determined from the pleadings and from the nature of the controversy. *Smith v. Sperling,* 354 U.S. at 96, 77 S.Ct. 1112. Antagonism does not require fraud or bad faith. "There is antagonism whenever the management is aligned against the stockholder and defends a course of conduct which he attacks." *Id.* at 95, 77 S.Ct. at 1115. "Whenever the management refuses to take action to undo a business transaction or whenever . . . it so solidly approves it that any demand to rescind would be futile, antagonism is evident." *Id.* at 97, 77 S.Ct. at 1116. It is sufficient that the management, for whatever reason, is "definitely and distinctly opposed to the institution of [the] litiga-

tion." *Swanson v. Traer,* 354 U.S. at 116, 77 S.Ct. at 1118.

Despite the liberality of the Court's definition of antagonism, lower courts since *Smith* and *Swanson* have not hesitated to realign corporate defendants in proper cases. In *Lewis v. Odell,* 503 F.2d 445 (2d Cir. 1974), a shareholder of the Penn Central Transportation Company, then bankrupt and being managed by trustees, brought a derivative action on behalf of the corporation against a former director. The Second Circuit affirmed the district court's realignment of Penn Central as a plaintiff, observing that the trustees would not be harmed by the suit or have reason to oppose it, that the company had made neutral responses to the complaint and in fact reserved the right to take control of the action, and that no demand had been made on Penn Central to institute suit. 503 F.2d at 447.

Realignment of a corporation as a party plaintiff similarly was found appropriate in *Tessari v. Herald,* 207 F.Supp. 432, 435–37 (N.D.Ind.1962). In that case, the plaintiff shareholders had not made demand upon the corporation to institute the suit. Moreover, although the complaint named former directors of the corporation as individual defendants, none of those individuals were associated with the corporation at the time suit was brought. For those reasons, the court found that the plaintiff shareholders had failed to demonstrate any antagonism that would serve to prevent realignment. To the same effect is *In re Penn Central Securities Litigation,* 335 F.Supp. 1026, 1041–42 (E.D.Pa.1971), where realignment was ordered in a non-diversity jurisdiction case, based in part on the facts that the corporation was under new management and that no demand had been made upon the new directors to bring suit.

■ Another circumstance indicating a lack of antagonism, and consequently requiring alignment of the corporation as a plaintiff, arises when the plaintiff shareholders control a majority of the corporation's stock. *Irwin v. West End Develop-*

*ment Co.,* 342 F.Supp. 687, 702 (D.Colo. 1972), *rev'd in part on other grounds,* 481 F.2d 34 (10th Cir. 1973), *cert. denied,* 414 U.S. 1158, 94 S.Ct. 915, 39 L.Ed.2d 110 (1974). Also, antagonism has been found absent when the corporation is disabled from acting because of corporate deadlock. *Kartub v. Optical Fashions, Inc.,* 158 F.Supp. 757 (S.D.N.Y.1958).

The court considers this to be a case where the corporations on whose behalf suit was brought must be aligned as plaintiffs in the action. The trustee in bankruptcy refused to bring this action when demand was made upon him in 1973. He then obtained leave from the bankruptcy court to abandon the cause of action, at which time it reverted to the corporations. There is no suggestion that the trustee opposes this suit. No demands have been made since the initial demand upon the trustee. Plaintiffs control a majority of the corporation stock. The corporations, being bankrupt, no longer operate or function in any meaningful sense. None of the individual defendants were in control of the corporation at the time suit was instituted, or are currently in control. Although the serious nature of the misconduct alleged to have been committed by the individual defendants is apparent, past misconduct on the part of persons no longer involved in the management of the corporation in no way demonstrates present antagonism.

In sum, this is not an instance where the corporations are "*definitely* and *distinctly* opposed to the institution of [the] litigation." *Swanson v. Traer,* 354 U.S. 114, 116, 77 S.Ct. 1116, 1118, 1 L.Ed.2d 1221 (1957) (emphasis added). The court finds no "real collision of issues," *Smith v. Sperling,* 354 U.S. 91, 97, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957), between plaintiff shareholders on one hand and defendant corporations on the other. Therefore, the court concludes that the corporations should be realigned as plaintiffs and consequently the action must be dismissed for lack of jurisdiction.

Accordingly, it is this 18th day of August, 1978, by the United States District Court for the District of Maryland, ORDERED that this action be, and the same hereby is, DISMISSED.